841 F.2d 31
 Faris Abdul MATIYN, Plaintiff-Appellant,
v.
Robert HENDERSON, Superintendent of Auburn Correctional
Facility, and Joseph Costello, Deputy
Superintendent for Security at Auburn
Correctional Facility,
Defendants-Appellees.
 No. 279, Docket 87-2201.
 United States Court of Appeals,
Second Circuit.
 Submitted Nov. 6, 1987.
Decided March 1, 1988.
 
 Faris Abdul Matiyn, pro se.
 Robert Abrams, Atty. Gen., Albany, N.Y. (Peter H. Schiff, Deputy Sol. Gen., Nancy A. Spiegel, Daniel Smirlock, Asst. Attys. Gen., of counsel), for defendants-appellees.
 Before LUMBARD, PIERCE, and MINER, Circuit Judges.
 PIERCE, Circuit Judge:
 
 
 1
 In May, 1985, appellant Faris Abdul Matiyn was transferred from the general prison population of Auburn Correctional Facility ("Auburn") in New York to a special housing unit at the prison, and from the special housing unit to the general prison population at Attica Correctional Facility ("Attica"). Matiyn subsequently commenced this action for damages pursuant to 42 U.S.C. Sec. 1983 against Robert Henderson, the Superintendent of Auburn, and Deputy Superintendent Joseph Costello, alleging that the transfers violated his constitutional rights under the fourteenth amendment. Matiyn now appeals pro se from a judgment of the United States District Court for the Northern District of New York, Howard G. Munson, Ch. J., denying appellant's motion for summary judgment, granting appellees' motion for summary judgment, and dismissing the complaint. We affirm.
 
 BACKGROUND
 
 2
 The essential facts herein are not in dispute. Appellant Matiyn, who is currently imprisoned at the Attica Correctional Facility, is a member of the Sunni Muslims, a religious sect. Prior to his transfer from Auburn to Attica, Matiyn was chosen by his fellow Sunni Muslim prisoners to serve as their prayer leader, or imam. On May 5, 1985, amid rumors of impending trouble among factions of the Muslim community of prisoners at Auburn, Sergeant Marroccia requested permission from his watch commander to search for contraband in the area of the prison chapel that served as Matiyn's office. Permission was granted and Marroccia, accompanied by the prison chaplain, Father Enright, searched Matiyn's office. During the course of the search, Marroccia found a folder, which Father Enright thought belonged to Matiyn, lying on top of the altar. Inside the folder was a twelve-inch homemade knife. Another knife, some eleven inches long, was discovered in another part of the chapel.
 
 
 3
 The following day, the corrections officer assigned to the chapel area observed a Muslim inmate by the name of Cunningham pacing nervously up and down the hallway outside the chapel. After the noon meal, Cunningham failed to return to the chapel at his usual hour, and stayed away until 2:15 p.m. In the meantime, Matiyn had inquired as to Cunningham's whereabouts a number of times. According to the observing officer, there seemed to be hard feelings between the Sunnis and another religious sect, the American Muslim Mission, over the knives found in the chapel.
 
 
 4
 On the basis of the foregoing evidence, officials at Auburn confined Matiyn to a "special housing unit" ("SHU") at 3 p.m. on May 6, 1985. Four days later, at about 2 p.m. on May 10, Matiyn was released from the SHU and transferred to Attica. It is not disputed that Matiyn was not informed of the reasons for his detention and transfer.
 
 
 5
 Matiyn subsequently commenced the subject action pursuant to 42 U.S.C. Sec. 1983 (1982), alleging essentially that both his confinement in Auburn's SHU and his subsequent transfer deprived him of a liberty interest without due process. Matiyn and the defendants, Henderson and Costello, filed cross-motions for summary judgment.
 
 
 6
 On March 4, 1987, United States Magistrate Scanlon issued a report recommending that summary judgment be entered in favor of the defendants. Chief Judge Munson adopted the report, granted judgment for the defendants, and dismissed the complaint. This appeal followed. We affirm the judgment for the reasons that follow.
 
 DISCUSSION
 
 7
 I. Confinement to SHU and Transfer to Attica
 
 
 8
 Matiyn principally contends on appeal that appellees violated his right to due process (1) by confining him to SHU for four days without a hearing, and (2) by subsequently transferring him to Attica without notice and a hearing. In resolving these claims, we must determine (1) whether Matiyn was deprived of a protected liberty interest; and (2) if so, what process was due him. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 428, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982).
 
 
 9
 Initially, we note that Matiyn's claim that the transfer from Auburn to Attica deprived him of a protected liberty interest without due process is without merit. As a general rule, there is no constitutionally based liberty interest that entitles a prisoner to a hearing or any other safeguards before being transferred from one prison to another, absent a state law or regulation conditioning such transfer on proof of misbehavior or other specified events. See Montanye v. Haymes, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976); Meachum v. Fano, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). Matiyn had no liberty interest in remaining at the Auburn facility since New York law does not place conditions on interprison transfers. Montanye, 427 U.S. at 243, 96 S.Ct. at 2547; Sher v. Coughlin, 739 F.2d 77, 80 (2d Cir.1984).
 
 
 10
 More difficult to resolve is the issue of whether Matiyn's four-day confinement in Auburn's SHU prior to being transferred to Attica deprived him of a protected liberty interest. In analyzing intraprison restrictive confinements, this circuit has drawn a distinction between confinement as a disciplinary sanction and confinement as an administrative procedure. Generally, when an inmate of the New York prison system is confined to SHU for disciplinary reasons, he is deprived of a liberty interest which is protected by state law. Sher, 739 F.2d at 81. Under such circumstances, due process entitles the prisoner to certain procedural protections as set forth in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). On the other hand, when a prisoner is confined to SHU for administrative reasons, he is entitled to fewer procedural protections. Generally, prison inmates have no liberty interest in remaining within the general prison population, and out of administrative segregation, unless the state has chosen to create such an interest by enacting certain statutory or regulatory measures. Hewitt v. Helms, 459 U.S. 460, 468-69, 103 S.Ct. 864, 869-70, 74 L.Ed.2d 675 (1983). The mere adoption by the state, however, of "procedural guidelines, without more," is insufficient to give rise to a liberty interest protected under the fourteenth amendment; only "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest." Id. at 471-72, 103 S.Ct. at 871. In addition, even when the state creates a protected liberty interest, the inmate confined for administrative reasons is entitled to only minimal process--"some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." Id. at 476, 103 S.Ct. at 874; see also Bolden v. Alston, 810 F.2d 353, 357 (2d Cir.1987). Ordinarily, a written statement by the inmate to the prison officials who are reviewing his confinement will demonstrate that an inmate has been notified of the charges against him and that he has been given an adequate opportunity to present his views to those officials. Hewitt, 459 U.S. at 476, 103 S.Ct. at 874.
 
 
 11
 In the present case, appellees claim (1) that Matiyn's four-day confinement was administrative, not punitive; and (2) that the governing statutes and regulations of the State of New York do not bestow upon prison inmates a protected liberty interest in remaining free from administrative segregation. To assess these claims, we note first that the relevant state statute permits the State Department for Correctional Services to adopt whatever regulations it sees fit for the classification of inmates. N.Y.Correc.Law Sec. 137(1) (McKinney 1987); see also Hall v. Unknown Named Agents, 825 F.2d 642, 645-46 & n. 1 (2d Cir.1987); Sher, 739 F.2d at 81. Pursuant to this grant of authority, the Commissioner has promulgated Title 7, Part 304 of the New York Code of Rules and Regulations, relating to "Admission to Special Housing Units." Our reading of Part 304 suggests that Matiyn may have been placed in administrative confinement under either 7 N.Y.C.R.R. Sec. 304.1(a), relating to "automatic admissions," or Sec. 304.1(b), relating to "protective admissions." Therefore, we must determine whether a protected liberty interest can arise out of either of these provisions.
 
 
 12
 Turning first to Sec. 304.1(a), we note that "automatic admission" shall apply, inter alia, in the case of "a special housing unit used for inmates assigned there temporarily by the central office reclassification and review team for the purpose of evaluation and reclassification." 7 N.Y.C.R.R. Sec. 304.1(a)(1)(4). See also 7 N.Y.C.R.R. Sec. 300.3(5) (stating that SHU's may be used to provide a place for housing persons who are assigned for the purpose of evaluation and reclassification). The regulations set forth no procedures that must be undertaken prior to an automatic admission; consequently, the state impairs no protected liberty interest by placing an inmate in SHU for the purpose of reclassification. Hall, 825 F.2d at 644; Sher, 739 F.2d at 81. We conclude that if Matiyn was confined pursuant to automatic admission, he was not deprived of a protected liberty interest.
 
 
 13
 As noted above, however, Matiyn may have been confined to administrative segregation pursuant to 7 N.Y.C.R.R. Sec. 304.1(b), which governs "protective admission." Under this provision, protective admission shall apply, inter alia, in the case of inmates who must, "for good cause, be restricted from communication with the general inmate population." In accordance with this rule, a decision to confine Matiyn to protective admission pending his transfer to Attica might be justified by the need to restrict him from communicating with the general inmate population during a time of high tension following the discovery of the knives. See, e.g., Deane v. Dunbar, 777 F.2d 871, 873, 875-76 (2d Cir.1985) (inmates transferred temporarily from Attica to Auburn, to stand trial in county courthouse on Attica riot charges; court recognized that involuntary protective custody might be appropriate to preserve safety of inmates and others). Since Matiyn may have been confined pursuant to a protective admission, we must determine whether the applicable regulations give rise to a protected liberty interest.
 
 
 14
 In our view, the applicable regulations relating to admission to SHU do create a protected liberty interest in remaining free from involuntary protective admission. Under 7 N.Y.C.R.R. Sec. 304.2(b), protective admission cases may be placed in special housing units only in accordance with Sec. 304.3 ("Protective Admissions"), and only when such action is authorized, in writing, by a supervisory officer designated by the superintendent to grant approval in such cases. No variation from these procedures is permitted under any circumstances. 7 N.Y.C.R.R. Sec. 304.2(d). Three other provisions are relevant in determining whether the regulations create a protected liberty interest. First, under Sec. 304.3(a), protective admission to a special housing unit may be made only when there is substantial evidence that such action is necessary, unless the inmate consents to the admission. Second, under Sec. 304.3(c):
 
 
 15
 Where the inmate does not consent to a protective admission to a special housing unit, a proceeding will be held within 14 days of the date of such admission to determine if there is substantial evidence that protective custody is necessary. The proceeding shall be conducted in accordance with the procedures for a superintendent's hearing. An inmate may appeal the finding of substantial evidence in accordance with the provisions of Part 254 of this Title.
 
 
 16
 Finally, under Sec. 304.3(d), an inmate confined involuntarily under protective admission "shall be specifically advised that he has the right to communicate with the commissioner with respect to his confinement in the special housing unit." Like the regulations at issue in Hewitt, the New York regulations relating to protective admission contain "language of an unmistakably mandatory character," Hewitt, 459 U.S. at 471, 103 S.Ct. at 871, such as the requirement that protective admission may be employed only when the superintendent authorizes such confinement in writing. In addition, the New York regulations specify substantive predicates upon which a protective admission may be based, see Hewitt, 459 U.S. at 472, 103 S.Ct. at 871-72, such as the need to restrict the inmate from communicating with fellow prisoners. Based on what we perceive as the "repeated use of explicitly mandatory language," id., in connection with specified conditions authorizing the use of protective admission, we conclude that the State of New York has created a protected liberty interest in inmates remaining free from involuntary protective admission.
 
 
 17
 Moreover, on the facts before us, we believe that if Matiyn was involuntarily detained under the protective admission regulations, he was deprived of a protected liberty interest without due process of law. As noted above, the fourteenth amendment requires that an inmate who is deprived of a protected liberty interest must be provided with some notice of the charges against him, and a minimal opportunity to present his views to prison officials. See Hewitt, 459 U.S. at 472, 476, 103 S.Ct. at 871-72, 874. In the present case, however, Matiyn received no process whatsoever. Moreover, appellees are incorrect in asserting that inmates held in administrative segregation for less than fourteen days are not entitled to a hearing under 7 N.Y.C.R.R. Sec. 304.3(c). In the first place, the regulation states only that a proceeding will be held within fourteen days of admission; in our view, the regulation does not suggest that prisoners detained for less than fourteen days may be denied any opportunity at all to contest the detention. Second, even if the regulation could reasonably be construed in the manner suggested by appellees, the constitutional requirement of notice and a hearing would override any regulatory provision to the contrary. For the foregoing reasons, we conclude that if Matiyn was subjected to a protective admission without some form of notice and a hearing, he was deprived of his rights under the fourteenth amendment.
 
 
 18
 Nevertheless, we believe that, even if appellant was the subject of an administrative protective admission, appellees are entitled to summary judgment on the ground of qualified immunity. As a general rule, state officials are shielded from liability for civil damages in Sec. 1983 actions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Two factors suggest to us that appellees' decision to confine Matiyn to protective admission without notice and a hearing did not violate clearly established law. We note first that, under Hewitt, to determine whether a given regulation creates a protected liberty interest requires an assessment, inter alia, as to whether the regulatory language is "of an unmistakably mandatory character," Hewitt, 459 U.S. at 471, 103 S.Ct. at 871 (emphasis added). Although we believe that the language of Sec. 304.3 is sufficiently mandatory to create a protected liberty interest, we recognize that Auburn officials heretofore could reasonably have reached a different conclusion. Second, although we interpret Sec. 304.3(c) to require a hearing within fourteen days of the date of admission, and not to eliminate the need for a hearing when an inmate is confined for a shorter period, we recognize that the regulation is not a model of clarity. Indeed, both the magistrate and the district court accepted appellees' interpretation of Sec. 304.3(c).[1] Finally, we note that until now there has been no judicial decision or interpretation of the regulations that could have guided the actions of prison officials. We therefore conclude that, even if Matiyn was subjected to administrative detention under the protective admission regulations, and even though appellees' failure to provide Matiyn with notice and an opportunity to present his views violated his right to due process, qualified immunity protects appellees from liability upon the facts of this case.
 
 
 19
 Finally, we conclude that, even if Matiyn was placed in SHU partly for punitive reasons, he is not entitled to relief herein. We have previously held that an interim confinement pending disciplinary hearings is administrative, not disciplinary. See Bolden, 810 F.2d at 357 n. 3. In like manner, Matiyn's four-day confinement was simply an interim placement, justifiable either for the purpose of evaluation and reclassification, or for the purpose of restricting him from communication with other prisoners, pending his transfer to another prison. Since Matiyn would have been confined in administrative segregation regardless of any punitive motivation, he was not entitled to the heightened due process procedures associated with disciplinary confinement. See Deane, 777 F.2d at 877; Sher, 739 F.2d at 82.
 
 
 20
 The foregoing analysis may be summarized as follows. Appellant was subjected to either "automatic admission," under Sec. 304.1(a)(4), or to "protective admission" under Sec. 304.1(b). If Matiyn was confined under Sec. 304.1(a)(4), however, his rights were not violated because this provision does not give rise to a liberty interest cognizable under the fourteenth amendment. If Matiyn was confined under Sec. 304.1(b), he was deprived of a liberty interest without due process of law. Under this second view, however, appellees are protected from liability by the doctrine of qualified immunity. Finally, even if appellees were motivated in part by punitive considerations, Matiyn was not entitled to the procedures normally associated with disciplinary confinement, because the confinement would have been undertaken in any event on the facts herein for administrative purposes alone.
 
 II. First Amendment Claim
 
 21
 Matiyn contends on appeal that appellees' decision to confine him to administrative segregation violated his first amendment right to freedom of religion. Among other things, appellant argues that, during his confinement, he was prevented from attending congregate services, as required by his religion. The district court held that Matiyn was precluded from raising this issue because it had not been stated in his complaint; instead, Matiyn raised the issue for the first time in his motion papers.
 
 
 22
 We believe that the district court was correct in holding that the first amendment claim was not properly raised in the complaint.[2] In any event, we agree with the district judge's alternative holding, that Matiyn was prevented from attending communal services for reasons related to legitimate penological objectives, and that his claim was therefore without merit. See, e.g., O'Lone v. Estate of Shabazz, --- U.S. ----, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (prison officials did not violate inmate's rights, by assigning him to outside work detail that prevented him from attending weekly congregational service, because rules relating to outside assignments were reasonably related to legitimate penological objectives); Fromer v. Scully, 817 F.2d 227 (2d Cir.1987) (prison officials can require inmate to trim his hair and beard, in contravention of his religious beliefs, to further legitimate government interests).
 
 
 23
 We have examined appellant's other arguments and find them to be without merit. For the foregoing reasons, we affirm the judgment in all respects.
 
 
 
 [1]
 Of course, as we have pointed out above, even if Sec. 304.3 did not include the fourteen-day provision, the fourteenth amendment would entitle appellant to some type of notice and an opportunty to be heard, because the remaining portions of Part 304 create a liberty interest in remaining free from involuntary protective admission
 
 
 [2]
 The complaint states, inter alia, "i [Matiyn] am the suni muslim imam and because i am the suni muslim imam, i was illegally placed in the special housing unit without a notice and a hearing [sic]." Conceivably, this language could be construed to support a claim that prison officials denied Matiyn his right to equal protection on the basis of his religion. Nevertheless, there is no evidence in the record to support such a claim
 Matiyn requested leave to raise additional issues, including his first amendment claims, by way of an amended complaint, but this request was denied by the district court. Matiyn nonetheless argued some of these additional claims in his motion papers.