Emmeth **SEALEY**, Plaintiff,

v.

Thomas J. **COUGHLIN**, III, Commissioner, Dept. of Corrections; Donald Selsky, Director of Special Housing/Inmate Discipline; T.H. Giltner; R. Brimmer, Defendants.

No. 92–CV–47.

United States District Court, N.D. New York.

July 15, 1994.

Emmeth Sealey, pro se.

G. Oliver Koppell, Atty. Gen. of the State of N.Y., Albany, NY, for defendants (Peter G. Favretto, Asst. Atty. Gen., of counsel).

## MEMORANDUM DECISION & ORDER

HURD, United States Magistrate Judge.

In his civil rights complaint pursuant to 42 U.S.C. § 1983, plaintiff alleges that while he was an inmate at the Auburn Correctional Facility in Auburn, New York, he was placed in involuntary administrative confinement in violation of his due process rights. Specifically, he alleges that he was denied the right to present witnesses at a hearing to determine whether to adopt a recommendation that he be administratively confined. Plaintiff additionally claims that as a result of these due process deprivations he was unlawfully confined in the Special Housing Unit ("SHU") for the period from March 30, 1990, until August 29, 1990, (152 days) when he was transferred to another facility. Plaintiff brings this suit against the defendants in their individual and official capacities, seeking compensatory and punitive damages for the time spent in SHU.

Presently before the court is plaintiff's motion for summary judgment and defendants' cross-motion for dismissal or summary judgment pursuant to Fed.R.Civ.P. 56. For the following reasons, plaintiff's motion is denied and defendants' motion for summary judgment is granted in part and denied in part.

## FACTS

On March 30, 1990, an altercation took place at Auburn Correctional Facility, wherein an inmate was sliced in the neck with a "shank." Plaintiff, having been spotted in the vicinity of the victim at the time of the incident, was issued a misbehavior report the next day, charging him with assault, fighting and possession of a weapon. He was placed in administrative confinement in SHU pending the results of a Tier III disciplinary hearing. A disciplinary hearing was held on April 6, 1990, wherein Lt. Richards acted as hearing officer. On April 9, 1990, Lt. Richards found plaintiff not guilty of the charges of assault (100.10); fighting (100.13); and possession of a weapon (113.10). The following day, Lt. Richards filed an opinion recommending plaintiff's continued administrative confinement in SHU. He based this recommendation on confidential information heard at the April 6, hearing, and advised that plaintiff's presence in the general population would jeopardize the safety and security of the facility.

Lt. Giltner conducted a Superintendent's hearing on April 16, 1990, to determine whether to adopt the above-mentioned recommendation. Lt. Giltner made the determination to adopt the recommendation that plaintiff remain in SHU. This determination was reversed on appeal to Donald Selsky on June 18, 1990, for inter alia, failure to call requested witnesses.

A rehearing was conducted by Lt. Brimmer on July 8, 1990, wherein plaintiff's requested witnesses were again refused and the recommendation for plaintiff to remain in SHU was again adopted. Donald Selsky this time affirmed the hearing officer's determination, deciding on September 7, 1990, that the hearing comported with established procedures.

Meanwhile, on August 29, 1990, plaintiff was transferred from SHU in Auburn to Shawangunk Correctional Facility where he was released into the general population.

Plaintiff wrote to the Commissioner of the Department of Correctional Services, Thomas Coughlin, on September 14, 1990. He sought information on the status of his ap-

peal of the July 8, 1990, hearing. Commissioner Coughlin responded on October 15, 1990, that plaintiff's appeal had been dealt with by Donald Selsky, and that he should have received a copy of the determination.

Plaintiff filed an Article 78 proceeding in New York State Supreme Court to compel reversal of Lt. Brimmer's determination. This action was rendered moot when Donald Selsky reversed Lt. Brimmer's determination on January 23, 1991. No grounds were stated for the reversal. However, Selsky stated in response to plaintiff's interrogatories, that the grounds for reversal were the same as in the June 18, 1990, reversal; namely, that the hearing officer failed to assess the testimony of the confidential witnesses and that requested witnesses were not called.

Plaintiff filed this § 1983 action in federal court on January 10, 1992, alleging a violation of his due process rights. Plaintiff moved for summary judgment on January 6, 1993, and defendants cross-moved for dismissal of the complaint or for summary judgment.

### DISCUSSION

The Court will treat defendants' cross-motion as one for summary judgment. The entire file will therefore be reviewed in determining that motion.

### I. MOTION FOR SUMMARY JUDGMENT:

A motion for summary judgment may be granted only when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell, Partnership v. Medfit Int'l, Inc.,* 982 F.2d 686, 689 (1st Cir.1993); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the summary judgment motion." *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983). In other words, a motion for summary judgment pursuant to Fed.R.Civ.P. 56 shall be granted only "when the pleadings, evidence obtained through discovery, and affidavits show that there is no genuine issue

as to any material fact, and that the moving party is entitled to summary judgment as a matter of law." *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991). Therefore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Thus, if the nonmoving party can not produce sufficient evidence to support the jury verdict, summary judgment is proper. *Id.* at 249, 106 S.Ct. at 2510–11. "In determining how a reasonable jury would decide, the Court must resolve all ambiguities and draw all inferences against the moving party." *Lang,* 949 F.2d at 580. However, when the moving party has met the burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also Liberty Lobby,* 477 U.S. at 247–48, 106 S.Ct. at 2509–11. At that point, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* "The judge's function is not ... to weigh the evidence and determine the truth of the matter," *Liberty Lobby,* at 249, 106 S.Ct. at 2511, such "is the prerogative of the finder of fact." *Murphy v. Provident Mutual Life Ins. Co.,* 923 F.2d 923, 930 (2d Cir.1990) (Kearse, J., dissenting), *cert. denied,* —— U.S. ——, 112 S.Ct. 65, 116 L.Ed.2d 40 (1991). Therefore, the judge's role is "to determine whether there does indeed exist a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

In a case where both sides have moved for summary judgment, as is the case at bar, each side must sustain its burden of proving the absence of disputed issues of material fact in order to be successful.

### II. CLAIM AGAINST COUGHLIN:

█ It is well settled that the personal involvement of a defendant is a prerequisite

for the assessment of damages in a § 1983 action. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). In their motion for summary judgment, defendants argue that the complaint should be dismissed with respect to defendant Thomas J. Coughlin, Commissioner, Dept. of Corrections ("Coughlin") on the grounds that it does not allege the requisite level of personal involvement to satisfy a § 1983 claim. This court agrees.

■ A supervisory official can be said to have been personally involved in a constitutional violation only if that official: (a) directly participated in the violation; (b) failed to remedy the wrong after learning of the violation through a report or appeal; (c) created a custom or policy fostering such violations, or allowed such a custom or policy to continue; or (d) was grossly negligent in managing subordinates who caused the violation. *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986).

Plaintiff alleges that Commissioner Coughlin was aware of the constitutional violations because plaintiff had written him about the matter. Plaintiff did write two letters. However, plaintiff's first letter to Coughlin constituted his appeal of the subject hearing, which was dealt with directly by Donald Selsky. The second letter sent by plaintiff sought information about the appeal's status. Commissioner Coughlin responded to the second letter by informing plaintiff that he was not directly handling the appeal, and that it was his understanding that Selsky had sent him a copy of the decision. Plaintiff does not allege in his complaint that Coughlin promulgated or was otherwise aware of any unconstitutional customs or policies. Plaintiff attempts to implicate Coughlin by arguing that Selsky acted as his agent in the matter of plaintiff's administrative appeal. While this may be true, plaintiff fails to allege that Coughlin was grossly negligent in his supervision of Selsky—the one possible argument for allowing an agency relationship to constitute personal involvement. *Id.* Nor

does defendant Coughlin's awareness of plaintiff's claims constitute the requisite involvement, for Coughlin had taken the appropriate steps to remedy plaintiff's alleged wrong by assigning Selsky to review his appeal. He is not under the obligation to review every one of the thousands of cases dealt with by defendant Selsky. Accordingly, plaintiff's claim against defendant Coughlin has no merit and is dismissed.

### III. CLAIM AGAINST SELSKY:

■ Plaintiff's complaint can be read to allege that Selsky's review of the hearing was constitutionally deficient in accordance with *Williams;* specifically, that he failed to remedy the wrong after learning of the violation through an appeal. *Williams,* 781 F.2d at 323–24.[1]

Although the Second Circuit has not addressed the issue of whether Selsky is absolutely immune from liability, several of the district courts within the Circuit, including this one, have found that he does act as a quasi-judicial officer and therefore is immune from liability. *Parris v. Coughlin,* 90–CV–414, 1993 WL 328199 (N.D.N.Y. August 24, 1993); *Parkinson v. Employee Assistant,* 1993 WL 118451 (S.D.N.Y. April 12, 1993); *Pacheco v. Kihl,* No. CIV–90–549T (W.D.N.Y. Dec. 17, 1992); *but see Moye v. Selsky,* 826 F.Supp. 712 (S.D.N.Y.1993). This court is in agreement with *Parris, Parkinson,* and *Pacheco,* and continues to follow the reasoning set forth therein. Therefore, Selsky is absolutely immune from suit, and the complaint against him is dismissed.

### IV. CLAIM AGAINST GILTNER AND BRIMMER:

#### A. Plaintiff's Due Process Claim:

Plaintiff essentially claims that he was deprived of a constitutionally protected liberty interest by being placed in administrative confinement in a Special Housing Unit ("SHU"), without due process. Due process requires that an inmate be given adequate notice and an opportunity to be heard "at a

---

1. Selsky reversed plaintiff's first appeal, and then upheld the hearing officer's determination on appeal of the second hearing. Subsequent to plaintiff's New York State Article 78 proceeding, he overturned the second hearing as well.

meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) *quoting Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). The Supreme Court found that, when dealing with administrative confinement, a meaningful time would be "a reasonable time after an inmate's transfer." *Hewitt v. Helms*, 459 U.S. 460, 476, 103 S.Ct. 864, 874, 74 L.Ed.2d 675 (1982).

■ It is important to note the distinction between administrative confinement, and confinement meant to instill discipline. The latter carries with it many procedural protections for the prisoner, for instance, the right to call witnesses unless it would jeopardize the safety of the facility; the right to assistance of a staff member in the preparation of a defense; and the right to a written list of reasons relied upon by the hearing officer, to name a few. *See Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

The former, however, carries far fewer procedural protections. As Judge Ward explained in *Gomez v. Coughlin*, 685 F.Supp. 1291, 1296 (S.D.N.Y.1988):

> The Supreme Court held in *Hewitt v. Helms*, 459 U.S. 460, 468, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1982) that the Constitution does not create a liberty interest to be free from prison administrative segregation, whether the purpose of the segregation is to protect the prisoner's safety, to protect others from that prisoner, to break up potentially disruptive groups of inmates or to await later classification or transfer
> . . .

New York State has taken it upon itself however, to create just such a liberty interest through its enactment of regulations using explicit mandatory language. *Gittens v. Le-Fevre*, 891 F.2d 38, 40 (2d Cir.1989).[2] But as stated in *Gomez:*

[E]ven when the state creates such a protected liberty interest, the inmate confined for administrative reasons is entitled to only minimal process—"some notice of the charges against him and an opportunity to present his view to the prison official charged with deciding whether to transfer him to administrative segregation."

*Gomez*, 685 F.Supp. at 1297, *quoting Hewitt*, 459 U.S. at 476, 103 S.Ct. at 874; *see also Matiyn v. Henderson*, 841 F.2d 31, 34 (2d Cir.1988).

Minimal due process received a definitive push in 1988 when the Second Circuit came down with *Matiyn*, supra. The Court there stated, "[W]e conclude that if Matiyn was subjected to a protective admission without some form of notice *and a hearing*, he was deprived of his rights under the fourteenth amendment." *Id.* at 36 (emphasis added).

A year later, the Court seemed to further the strength of the *Matiyn* holding, when in *Gittens*, 891 F.2d 38, the Court cited *Matiyn* as holding that "confinement of [an] inmate in [a] Special Housing Unit violated due process when no hearing [was held] until [the] resolution of [the] underlying disciplinary charges." *Gittens*, 891 F.2d at 41.[3]

Then, six years later—only three months ago—the Second Circuit came down with *Lowrance v. Achtyl*, 20 F.3d 529 (2d Cir. 1994). There, the Court appeared to read the minimal due process requirement of *Hewitt* with a bit more emphasis on the word minimal than was given in *Matiyn*. The Court found that plaintiff had been given an opportunity to be heard when he wrote to the officer in charge of his confinement. Furthermore, it was not important that the letter was not answered. The fact that plaintiff was provided with an opportunity to present his views satisfied due process. Once he had been given that immediate opportunity to be heard therefore, the hearing requirement,

---

**2.** The New York Codes Rules and Regulations (NYCRR) allows administrative confinement of an inmate only when the correction officer "has reasonable grounds to believe that an inmate . . . represents an immediate threat to the safety, security or order of the facility." 7 N.Y.C.R.R. § 251–1.6(a) (1988); *see also Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir.1994). Furthermore,

reasonable grounds exist when "an officer reasonably believes that a facility rule has been violated." *Id., quoting Bowe v. Smith*, 119 Misc.2d 453, 455, 465 N.Y.S.2d 391, 393 (Sup. Ct.1983).

**3.** It is unclear that *Matiyn* had gone this far.

mandated by *Matiyn*, supra, could be satisfied by the underlying disciplinary hearing.[4]

The facts in *Gittens* parallel those of plaintiff herein. In *Gittens*, plaintiff was held in administrative confinement for seven days prior to receiving an opportunity to present his views to the officer in charge of his confinement. This opportunity finally came at the underlying disciplinary hearing. The Second Circuit found that a seven day delay, unjustified by dilatory circumstances,[5] would constitute a denial of due process.

The same factual scenario exists in the case at bar. Defendants have shown no evidence that Sealey was given some sort of opportunity to present his views to the officer in charge of his administrative confinement "at a reasonable time following an inmate's transfer." *Hewitt v. Helms*, 459 U.S. at 476, 103 S.Ct. at 874. Therefore, without such evidence, the *Gittens* interpretation that seven days without that opportunity to be heard would be violative of due process rights, applies herein.

Plaintiff's confinement could be viewed as three separate forms of administrative confinement: (1) the confinement prior to his disciplinary hearing; (2) confinement after the termination of the disciplinary hearing in his favor but prior to the hearing adopting the recommendation to keep him in administrative confinement; and (3) confinement during the appeals of the hearings adopting that recommendation.

■ Sealey's administrative confinement was instituted immediately upon the issuance of the March 30, 1990, misbehavior report. His first opportunity to voice his defenses however, did not come until seven days later, when the hearing for the underlying charges opened. No evidence has been presented, pointing to the slightest opportunity for Sealey to be heard prior to his disciplinary hearing. Therefore, his rights were violated resulting in seven days spent in SHU prior to his hearing.

■ However, Sealey seeks compensation for 152 days of administrative confinement. Only the first seven fall within the first category of administrative confinement listed above. Therefore, it must be determined whether Sealey's due process rights were violated by holding him in administrative confinement subsequent to his disciplinary hearing.

Lt. Richards conducted plaintiff's disciplinary hearing and found plaintiff not guilty of all charges due to a lack of evidence that would substantiate confidential information. Richards however, filed an Administrative Segregation Recommendation stating his belief that plaintiff was involved in extortion and strong arming other inmates in violation of facility rules. He recommended plaintiff's continued confinement until a hearing could be held, and specifically advised that plaintiff's presence in the general population would jeopardize the safety and security of the facility.

Since his confinement was purely administrative, plaintiff was not entitled to the protections of a disciplinary proceeding. *Gomez*, 685 F.Supp. at 1297. Plaintiff thus had no federal constitutional right to call witnesses, *Id.;* the procedural defect that plaintiff alleges violated his rights. Plaintiff's due process rights were "minimal," limited to some form of notice and an opportunity to be heard. *See e.g. Gittens*, 891 F.2d 38. Plaintiff however, was provided his opportunity to be heard at the disciplinary hearing. Subsequent administrative confinement, although prior to a determination on whether the confinement would continue, was therefore constitutional.

4. Even though *Gittens* had stated that the underlying disciplinary hearing would not suffice to satisfy plaintiff's minimal due process requirements, the Second Circuit's statement in *Lowrance* that a letter is an opportunity to be heard, suggests that *Matiyn* 's requirement of a hearing could then be delayed until the underlying disciplinary hearing once that opportunity to be heard was provided.

5. The Court in *Gittens* distinguished itself from the case of *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) wherein the Supreme Court found that a four day delay in granting the inmate an opportunity to be heard was not violative of his constitutional rights. The Second Circuit pointed to circumstances such as the need for an extensive investigation as justification for the delay. *Gittens*, 891 F.2d at 41.

■ Likewise, administrative confinement subsequent to each of the hearings, held to review the recommendation of Lt. Richards, reaches constitutional muster. That process which was due—"some notice of the charges against him and an opportunity to present his view to the prison official charged with deciding whether to transfer him to administrative segregation," *Hewitt,* 459 U.S. at 476, 103 S.Ct. at 874,—was in fact provided, notwithstanding the fact that Donald Selsky subsequently reversed each hearing determination due to a failure to call witnesses requested by plaintiff.

■ Having identified the potential violation—the first seven days in SHU without an opportunity to be heard—the task remains to determine potential culpability. Defendant Brimmer dealt with plaintiff and his confinement only in Brimmer's conduct of the second hearing to review Lt. Richards recommendation for administrative segregation. No other allegation has been presented, and nothing in the file points to his involvement in the actions surrounding the potential violation on which this Court now focuses. Therefore, in keeping with the discussion and recommendation for claims against defendant Coughlin, it is recommended that any claims alleged against defendant Brimmer be dismissed due to a lack of personal involvement.

■ Finally, the misbehavior report underlying plaintiff's administrative confinement, identifies defendant Giltner as the reporting officer. The record is devoid of facts identifying the officer responsible for plaintiff's original administrative confinement. Recall that the Supreme Court in *Hewitt* stated that with regard to the minimal due process rights available to an administratively segregated inmate, the inmate must be given "an opportunity to present his view to the prison official charged with deciding whether to transfer him to administrative segregation." *Hewitt,* 459 U.S. at 476, 103 S.Ct. at 874. Giltner's close involvement with the actual incident, combined with the absence of evidence showing his noninvolvement, requires this court to recommend that claims against defendant Giltner survive the motion for summary judgment.

This Court will not expound upon whether a violation might have occurred when defendant Giltner acted as hearing officer in the first hearing to review the recommendation of Lt. Richards. Plaintiff has not alleged such a violation. Therefore, the topic was not reviewed.

**B. Qualified Immunity:**

■ Defendants argue that they are further protected from suit by the doctrine of qualified immunity. The qualified immunity doctrine insulates a governmental official performing discretionary functions from liability as long as his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Eng v. Coughlin,* 858 F.2d 889, 895 (2d Cir.1988) *(quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The qualified immunity defense will not be overcome when the rights are ephemeral. *Eng,* 858 F.2d at 895. The defendants, acting in their official capacity, must have acted reasonably in order to be accorded qualified immunity. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738; *Wyler v. United States,* 725 F.2d 156, 159 (2d Cir.1983). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness' of the action ... assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038 *(citing Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39); *Mozzochi v. Borden,* 959 F.2d 1174, 1177 (2d Cir.1992).

■ In 1990, when plaintiff's disciplinary hearing took place, it was clearly established law that inmates had a constitutional right to be heard. *Matiyn,* 841 F.2d at 36. The Second Circuit in *Matiyn* stated that "if Matiyn was subjected to a protective admission without some form of notice and a hearing, he was deprived of his rights under the

fourteenth amendment." *Id.* Combine this rule with the Second Circuit holding in *Gittens,* 891 F.2d 38. There, the Court found that the underlying disciplinary hearing would not suffice to satisfy due process when held seven days after an inmate's initial administrative confinement. These two cases combine to show that the Second Circuit had clearly established Sealey's due process right to be heard on his administrative confinement within a time period shorter than that which was allotted to plaintiff. Therefore, it is recommended that defendant Giltner should not carry the protections of qualified immunity.

## CONCLUSION

Coughlin and Brimmer are entitled to a dismissal of the claims lodged against them because of no alleged personal involvement. Selsky is entitled to dismissal on the basis of absolute immunity. Giltner in acting as reporting officer, may have violated plaintiff's due process rights by refusing to allow plaintiff an opportunity to be heard, and is not entitled to qualified immunity for his actions.

In determining whether to adopt the recommendation of Lt. Richards to administratively confine plaintiff, Giltner and Brimmer relied upon the confidential testimony given at the disciplinary hearing conducted by Lt. Richards. That information led them to the determination that plaintiff should be confined for the safety and security of the facility. Plaintiff was not deprived of a constitutionally protected right when requested witnesses were denied, because no such right exists for administrative confinement.

Accordingly, it is **ORDERED** that

1. Plaintiff's motion for summary judgment is **DENIED;**

2. Defendants' cross-motion to dismiss, or in the alternative, for summary judgment is treated as a motion for summary judgment, and

3. Defendants' cross-motion for summary judgment is **GRANTED** for claims against defendants Coughlin and Brimmer; and

4. Defendants' cross-motion for summary judgment is **GRANTED** for claims against defendant Selsky, and

5. Defendants' cross-motion for summary judgment is **DENIED** for claims against defendant Giltner.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.