Emmeth SEALEY, Plaintiff,

v.

Thomas A. COUGHLIN; Donald Selsky; T.H. Giltner; and R. Brimmer, Defendants.

No. 92–CV–47.

United States District Court, N.D. New York.

March 13, 1998.

Foody and Peebles, Central Square, NY, for Plaintiff; Lisa A. Peebles, of counsel.

Dennis C. Vacco, Atty. Gen. of State of N.Y., Albany, NY, for Defendants; Lisa Renee Harris, Asst. Atty. Gen., of counsel.

### *MEMORANDUM—DECISION and ORDER*

HURD, United States Magistrate Judge.

### I. *INTRODUCTION*

Following a three day jury trial, the plaintiff was awarded One Dollar ($1.00) in nominal damages against one defendant on an alleged civil rights violation. The defendants now renew the motion made at the close of plaintiff's evidence and at the close of all the evidence, pursuant to Fed.R.Civ.P. 50(a). The defendant found liable by the jury, further moves post trial pursuant to Rule 50(b) for a judgment as a matter of law, or in the alternative, for a new trial pursuant to Rule 59(a). Plaintiff opposes the defendants' motions, and additionally moves for an award of attorney fees and expenses pursuant to 42 U.S.C. § 1988 and Fed.R.Civ.P. 54(d). Oral argument was heard in Utica, New York on January 12, 1998, and decision was reserved.

### II. *FACTS*

On March 29, 1990, correction officers reported that the plaintiff and two other inmates were suspiciously gathered in the main yard. Further investigation revealed that one of the inmates had been slashed along the left face and neck by a shank. After he was anonymously identified as the individual who had committed the offense, the plaintiff was issued a misbehavior report charging him with assault, fighting, and possession of a weapon. As a result, on March 30, 1990, the Auburn Correctional Facility confined the plaintiff to administrative segregation in the Special Housing Unit ("SHU") pending a disciplinary hearing.

Between April 6, 1990 and April 9, 1990, a Tier III disciplinary hearing was held by hearing officer Lieutenant G. Richards ("Richards"). Richards' hearing decision concluded that the plaintiff was not guilty of assault, fighting, or possession of a weapon. Essentially, Richards' decision rested on the fact that no employee witnessed the alleged assault and a report from a confidential informant remained unsubstantiated. However, the plaintiff was cautioned and warned that he might nevertheless remain confined to administrative segregation following a review of the confidential information. As a matter of fact, on April 10, 1990, Richards recommended that the plaintiff be placed in administrative segregation. Richards' recommendation indicated that the plaintiff's continued presence in the general population seriously jeopardized the safety and security of the correctional facility. It was alleged that the determination that plaintiff's presence in general population compromised the safety of the correctional facility was based upon a review of the report from the confidential informant and other information in the file.

As required by regulation, a hearing was conducted on April 16, 1990, to assess the prior recommendation that confined plaintiff to administrative segregation in SHU. Defendant, Lieutenant T.H. Giltner ("Giltner"), responsible for conducting the hearing, denied the plaintiff's request to personally view the confidential informant's report or have certain additional witnesses testify. Relying on the prior recommendation of Richards and the assertion that the confidential information suggested that the plaintiff had been involved in extortion, Giltner recommended that the plaintiff remain in administrative segregation. Pursuant to an appeal, the acting director of special housing and inmate discipline, defendant Donald Selsky ("Selsky"), determined that Giltner failed to independently verify the reliability of the confidential information, and inappropriately denied plaintiff's request to have certain witnesses testify. Consequently, on June 18, 1990, Selsky reversed Giltner's determination and ordered a rehearing.

On July 8, 1990, defendant Lieutenant R. Brimmer ("Brimmer") conducted a rehearing. Like Giltner, Brimmer refused the plaintiff's request to call witnesses, ultimately recommending that plaintiff remain in administrative segregation. Brimmer's recommendation that plaintiff remain in administrative segregation was based on the plaintiff's history of uncooperative behavior, continuous misbehavior charges against other inmates, and the information gleaned from the confidential informant's report. Again, plaintiff appealed the hearing officer's determination; however, on September 7, 1990, Selsky affirmed Brimmer's determination. Accordingly, on November 1, 1990, the plaintiff brought an Article 78 proceeding in the New York State Supreme Court, County of Albany. Plaintiff maintained that Brimmer failed to consider the credibility of the confidential information. Plaintiff also claimed that he was not allowed to call any witnesses to testify on his behalf. Thereafter, on January 22, 1991, Selsky reversed Brimmer's determination.

Plaintiff spent a combined one hundred fifty-two (152) days in Auburn's SHU. Specifically, plaintiff was in SHU between March 30, 1990 and April 9, 1990, pending the results of a Tier III disciplinary hearing; between April 10, 1990 and April 15, 1990, pursuant to Richards' recommendation that the plaintiff be administratively segregated; between April 16 and July 8, 1990, pursuant to Giltner's recommendation that plaintiff remain confined to administrative segregation; and between July 8, 1990 and August 29, 1990, pursuant to Brimmer's recommendation of administrative segregation. Finally, on August 29, 1990, the Department of Correctional Services transferred the plaintiff to the Shawangunk Correctional Facility where he was released into the general population.

On January 10, 1992, the plaintiff commenced this action pursuant to 42 U.S.C. § 1983, alleging that his rights were violated under the Fourteenth Amendment's Due Process Clause to the United States Constitution. Following various motions for summary judgment, plaintiff's complaint was dismissed. See Sealey v. Coughlin, 857 F.Supp. 214 (N.D.N.Y.1994). The plaintiff appealed

the decision, and the case was reversed and remanded back to the district court. *See Sealey v. Giltner,* 116 F.3d 47, 52–53 (2d Cir.1997). In particular, the remand instructed the district court to allow the plaintiff to factually develop the record concerning the existence of a liberty interest.[1] *See Sealey,* 116 F.3d at 53. Therefore, the case proceeded to trial on November 25, 1997. Following the close of the plaintiffs case, the complaint against Selsky was dismissed. At the close of all the proof, the remaining defendants, Giltner and Brimmer, moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a) on the grounds that the plaintiff had failed to prove that he, in fact, possessed a protected liberty interest in remaining free from administrative segregation. Decision was reserved regarding the Rule 50(a) motion, and the issues were submitted to the jury.[2]

On December 1, 1997, the jury returned a verdict in favor of the plaintiff and Brimmer. Specifically, the jury found that plaintiff's confinement was administrative rather than punitive. In addition, they determined that Giltner, but not Brimmer, had violated plaintiffs procedural due process rights.[3] As a consequence, the jury awarded the plaintiff One Dollar ($1.00) in nominal damages against Giltner. The above motions followed.

## III. DISCUSSION

### A. Rule 50(a) & (b)—Judgment as a Matter of Law.

#### 1. Standard

This court can only grant judgment as a matter of law on a claim if that claim "cannot under controlling law be maintained." Fed. R.Civ.P. 50(a)(1). Judgment as a matter of law is to be granted "only when, viewing the evidence most favorably to the [nonmoving party], there can be but one conclusion as to

the verdict that reasonable men could have reached." *Weldy v. Piedmont Airlines, Inc.,* 985 F.2d 57, 59–60 (2d Cir.1993) (citations and quotations omitted); *Slade v. Whitco Corp.,* 811 F.Supp. 71, 73 (N.D.N.Y.), *aff'd,* 999 F.2d 537 (2d Cir.1993). "The nonmovant must be given the benefit of all reasonable inferences." *Weldy,* 985 F.2d at 60. The defendant fulfilled the procedural necessity of moving for judgment as a matter of law before the case was submitted to the jury. *See* Fed.R.Civ.P. 50(a)(2), (b); *Slade,* 811 F.Supp. at 73.

### B. Liberty Interest

■ Without implicating a protected liberty interest, even a grievous loss will fail to invoke the procedural protections of the Due Process Clause. *See Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (citing *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)); *Rodriguez v. Phillips,* 66 F.3d 470, 479 (2d Cir.1995). As such, the inquiry into whether an inmate placed in SHU received procedural due process first involves the question of whether the inmate initially had a protected liberty interest in remaining free from the confinement. *See Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); *Sealey,* 116 F.3d at 51 (citing *Bedoya v. Coughlin,* 91 F.3d 349, 351–52 (2d Cir.1996)). However, it is well settled that only a limited range of interests will qualify as a liberty interest protected by the Fourteenth Amendment to the United States Constitution. *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983).

■ Liberty interests protected by the United States Constitution arise from either the Due Process Clause of the Fourteenth Amendment or State law. *See Sandin v. Conner,* 515 U.S. 472, 483–485, 115 S.Ct.

---

1. The remand reinstated Selsky, Giltner, and Brimmer as defendants, but affirmed the dismissal of defendant Thomas A. Coughlin, III. *See Sealey,* 116 F.3d at 51.

2. *See, e.g., Konik v. Champlain Valley Physicians Hosp. Medical Center,* 733 F.2d 1007, 1013 n. 4 (2d Cir.), *cert. denied,* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984) (reserving decision

on motion for directed verdict to prevent necessity for new trial if ruling reversed on appeal).

3. Since the actual procedures in the two hearings were almost identical, it can reasonably be inferred that the jury likely determined that Giltner was not an impartial hearing officer because of his prior involvement in plaintiff's disciplinary charges and should have recused himself.

2293, 132 L.Ed.2d 418 (1995); *Hewitt,* 459 U.S. at 466 (citing *Meachum v. Fano,* 427 U.S. 215, 223–227, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)). In the context of a correctional facility, it is clear that the United States Constitution does not confer upon an inmate a liberty interest to remain free from administrative segregation, absent evidence establishing that the confinement is outside the normal limits of custody imposed by the original sentence. *See Meachum,* 427 U.S. at 224 (1976); *Rodriguez v. R.J. Phillips,* 66 F.3d 470, 479 (2d Cir.1995) (citing *Hewitt,* 459 U.S. at 466–68). On the other hand, various courts have held that New York law through the use of "language of an unmistakably mandatory character" has conferred a liberty interest in remaining free from administrative confinement. *See Soto v. Walker,* 44 F.3d 169, 171 (2d Cir.1995) (citing *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994); *Santana v. Keane,* 949 F.2d 584, 585 (2d Cir.1991); *Russell v. Coughlin,* 910 F.2d 75, 77 (2d Cir.1990); *Gittens v. Lefevre,* 891 F.2d 38, 40 (2d Cir.1989)); *Giano v. Kelly,* 869 F.Supp. 143, 148 (W.D.N.Y.1994).

■ Despite the use of "language of an unmistakable mandatory character," cases holding that New York law created a protected liberty interest in remaining free from administrative segregation were recently limited by the Supreme Court to situations where the confinement imposed an atypical and significant hardship. *Sandin,* 515 U.S. at 484. In particular, the Court stated:

> The time has come to return to the due process principles ... correctly established and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin,* 515 U.S. at 483–484 (citations omitted). Consequently, an inmate must "establish both that the confinement or restraint creates an 'atypical and significant hardship' ... and that the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from [administrative] confinement or restraint." *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996) (quoting *Sandin,* 515 U.S. at 484).

■ It is not clear from the analysis in *Sandin* whether New York law alone continues to confer a liberty interest in remaining free from administrative confinement. *Rodriguez,* 66 F.3d at 480 (questioning the continuing viability of cases holding that New York regulations afford inmates a liberty interest in remaining free from administrative segregation); *Sullivan v. Schweikhard,* 968 F.Supp. 910, 913 (S.D.N.Y.1997). However, this question is immaterial considering that the plaintiff has failed to factually demonstrate that his administrative confinement in SHU was an atypical and significant hardship. For instance, it is clear that the length alone of plaintiff's confinement in SHU for one hundred fifty-two (152) days is not an atypical or significant hardship.[4] *See Husbands v. McClellan,* 990 F.Supp. 214, 216 (1998) (180 days in SHU not an atypical or significant hardship); *Beaman v. Coombe,* No. 96 CIV. 3622(DC), 1997 WL 538833, at *3 (S.D.N.Y. Aug.29, 1997) (92 days in SHU not an atypical significant hardship implicating a protected liberty interest); *Ruiz v. Selsky,* No. 96 Civ.2003, 1997 WL 137448, at *6 (S.D.N.Y. March 24, 1997) (192 days in SHU not a significant and atypical hardship); *Nogueras v. Coughlin,* No. 94 Civ. 4094, 1996 WL 487951, at *5 (S.D.N.Y. Aug.27, 1996) (210 days does not trigger due process concerns); *Polanco v. Allan,* No. 93–CV–1498, 1996 WL 250237, at *3 (N.D.N.Y. May 6, 1996) (period of one year or less affords no protected liberty interest); *Medina v. Bartlett,* No. 94–CV–0358E(H), 1995 WL 529624, at *2 (W.D.N.Y. Aug.28, 1995) (no assertable

---

4. Only eighty-three (83) days were actually attributable to Giltner's actions. (April 16, 1990 to July 8, 1990.)

liberty interest for 2,555 days in SHU); *Carter v. Carriero,* 905 F.Supp. 99, 104 (W.D.N.Y.1995) (270 days in SHU not considered an atypical or significant hardship).

Other than the plaintiff's own testimony that he had feces thrown in his face and was unable to concentrate and sleep because of constant noise in SHU, there was no other evidence at trial to support the contention that his confinement in administrative segregation was atypical and a significant hardship. No records, reports, or complaints were filed with the Auburn Correctional Facility verifying plaintiff's allegations of inhuman treatment. Consequently, plaintiff's allegations are unsupported conclusions. *See Tinsley v. Greene,* No. 95–CV–1765, 1997 WL 160124, at *6 (N.D.N.Y. March 31, 1997). Plaintiff's testimony alone, without corroborating evidence, cannot establish a liberty interest. To rule otherwise would allow a plaintiff/inmate to meet the "atypical" hardship threshold by merely testifying about some brutal conditions or treatment in SHU. If so, this would defeat the thrust of *Sandin.* Such claims are better left to the Eighth Amendment as cruel and unusual punishment.

The plaintiff also alleged that he was denied many of the privileges afforded inmates placed in the general population. He testified that he was confined to a small cell for twenty-three hours a day and only permitted to shower twice a week. However, "administrative segregation is the sort of confinement that [the plaintiff] should reasonably anticipate receiving at some point in [his] incarceration." *See Hewitt,* 459 U.S. at 468. Moreover, the denial of certain privileges enjoyed by inmates placed in general population fails to identify conditions outside the expected parameters of the sentence imposed by law. *See Frazier,* 81 F.3d at 317. Consequently, the evidence adduced at trial does not demonstrate the " 'type of atypical, significant deprivation in which [New York]

might conceivably create a liberty interest.' " *See Frazier,* 81 F.3d at 317 (quoting *Sandin,* 515 U.S. at 486).[5] This conclusion is supported by the jury's finding that plaintiff sustained no compensatory damages as a result of being confined to administrative segregation, warranting their award of only nominal damages. It can be safely assumed that if the jury had accepted the plaintiff's testimony regarding the hardships he allegedly suffered in administrative segregation as opposed to the general prison population, they would have made a compensatory damages award.

Therefore, plaintiff's administrative segregation in SHU was not an atypical and significant hardship. As a consequence, the plaintiff failed to establish a liberty interest entitling him to due process protections.

### C. *Attorney's Fees and Expenses.*

Federal Law provides in relevant part that in any action proceeding to enforce a provision of section 1983, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs. *Farrar v. Hobby,* 506 U.S. 103, 109, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (citing 42 U.S.C § 1988). In accordance with Congressional intent, to qualify for an award of attorney's fees under § 1988, a litigant must be considered a prevailing party. *Farrar,* 506 U.S. at 109. Moreover, an award of attorney fees to someone who is not a prevailing party is an abuse of discretion. *See Haley v. Pataki,* 106 F.3d 478, 483 (2d Cir.1997) (citing *Christopher P. v. Marcus,* 915 F.2d 794, 804–05 (2d Cir.1990)).

Without a finding that the plaintiff's confinement in SHU was an atypical and significant hardship, sufficient enough to invoke the protections of the Fourteenth Amendment, plaintiff cannot be considered a prevailing party. Therefore, plaintiff is not entitled to attorney fees and expenses.

---

**5.** No cases have been found to support the proposition advanced by the plaintiff that a liberty interest is created because the administrative segregation is "indefinite" subject to thirty day periodic reviews. Otherwise, since all administrative segregation is "indefinite," each such confinement would always involve a liberty interest, whereas disciplinary confinement would depend on the circumstances of each case. Again, this would appear to be contrary to the reasoning and spirit of *Sandin* and subsequent cases.

## IV. *CONCLUSION*

Therefore, it is

ORDERED that

1. Defendants Giltner and Brimmer's renewed motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a) is GRANTED;

2. Defendant Giltner's motion for a judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) is GRANTED;

3. Plaintiff's motion for attorney's fees and expenses pursuant to 42 U.S.C. § 1988 and Fed.R.Civ.P. 54(d) is DENIED; and

4. The Clerk is directed to enter judgment dismissing the complaint in its entirety against all defendants.

IT IS SO ORDERED.