**Darius GITTENS, Plaintiff–Appellant,**

v.

**Superintendent Eugene S. LeFEVRE, Review Officer Lt. Kavanaugh, Correction Officer J. Gillen, Sergeant Goodrich, Defendants–Appellees.**

**No. 90, Docket 88–2459.**

United States Court of Appeals, Second Circuit.

Argued Sept. 11, 1989.

Decided Nov. 29, 1989.

Charles F. Lacina, Chadbourne & Parke, New York City, for plaintiff-appellant.

Martin A. Hotvet, Asst. Atty. Gen., Albany, N.Y. (Robert Abrams, Atty. Gen. of State of N.Y., Peter H. Schiff, Deputy Sol. Gen., of counsel), for defendants-appellees.

Before PRATT, MINER, and ALTIMARI, Circuit Judges.

MINER, Circuit Judge:

This is an appeal from a judgment entered in the United States District Court for the Northern District of New York (McCurn, *Ch.J.*) dismissing plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6) for "failure to state a claim upon which relief can be granted." Plaintiff, an inmate at the Clinton Correctional Facility, alleged that defendants confined him to his cell and denied him any opportunity to make a statement challenging his confinement until a disciplinary hearing seven days later. The district court adopted the report-recommendation of Magistrate Gustave J. DiBianco finding that plaintiff had pleaded a *prima facie* due process violation. The district court held, however, in accordance with the magistrate's recommendation, that defendants were entitled to qualified immunity and dismissed the complaint. The court determined that it was objectively reasonable for defendants to believe that New York prison regulations, providing for a disciplinary hearing within seven days, satisfied the constitutional requirement that an inmate in administrative confinement be afforded an opportunity to be heard within a reasonable time. *See Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983).

On appeal, Gittens contends the law was clear at the time of his confinement that defendants could not deny him an opportunity to be heard, and therefore that defendants are not entitled to qualified immunity. We hold that the failure of New York regulations to provide inmates an adequate opportunity to be heard within a reasonable time of their administrative confinement violates the due process requirements enunciated in *Helms*, but that defendants acted reasonably in reliance on the New York regulations. For the reasons that follow, we affirm as modified.

## BACKGROUND

Plaintiff-appellant Darius Gittens commenced this action *pro se* while an inmate at the Clinton Correctional Facility, alleging that his federal constitutional and state law rights were violated when he was placed in "keeplock" for seven days pending a disciplinary hearing on charges that he violated a prison rule. "Keeplock" is a form of administrative segregation in which the inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates. *See* N.Y.Comp.Codes R. & Regs. tit. 7, § 251–1.6 (1988) [hereinafter N.Y.C. R.R.].

Gittens alleged in his complaint that he took scraps of wood and papers from a trash can in the prison library, with the permission and under the supervision of a correction officer named LaDuke, on May 1, 1986. LaDuke initialed some of the scraps, which Gittens planned to use to start a fire in an outdoor cooking stove. Before Gittens started the fire, however, defendant Correction Officer J. Gillen examined and confiscated some of the papers. When Gittens explained that the papers and wood had come from the trash, he was allowed to burn the remaining scraps.

The next morning Gittens was served with a copy of a misbehavior report, filed by Officer Gillen, accusing him of possessing "transfer papers of a [sic] incoming and out going draft of inmates, thus in violation of Rule 110.21," 7 N.Y.C.R.R. § 270.1[b][11][iii]. Upon receipt of the misbehavior report, Gittens was ·placed in

keeplock for seven days pending a disciplinary hearing. Each day of his confinement, Gittens complained to correction officers and attempted to contact the prison Superintendent to effect his release. Each time, Gittens was told that the prison's Review Officer continued to approve his confinement and that he would be released only after a disciplinary hearing on the underlying charge.

At a disciplinary hearing held on May 8, Gittens testified that Officer Gillen "never even attempted to see if his possession of the papers was authorized." The prison's Hearing Officer dismissed the charges without hearing Gittens' two witnesses, stating, "if it is a breaking of the rules, it's more of a border-line type of how you interpret the rules." Officer Gillen, he said, "should have just taken [the papers] and [thrown] them away." The Hearing Officer also stated that, in his personal view, Gittens' confinement was unjustified because he posed no threat to the safety or security of the facility.

Gittens commenced this action pursuant to 42 U.S.C. §§ 1983, 1985–1986 (1982), against defendants in their official and individual capacities, seeking declaratory and compensatory relief for violations of his rights under the first, fifth, and fourteenth amendments. The district court adopted the findings and recommendation of the magistrate, who found that the lack of an opportunity to make a statement to the officer who continued to approve keeplock, if proven, would constitute a violation of Gittens' due process rights. However, the magistrate also found that defendants were entitled to qualified immunity because, although *Helms* had established the due process standard for administrative confinement prior to the acts alleged, reasonable correction officers would have believed that the New York regulations complied with the *Helms* standard. That finding was adopted by the district court.

## DISCUSSION

### I. *Due Process*

State prison officials have "broad administrative and discretionary authority" to remove an inmate from the general prison population for the purpose of ensuring the safety and security of the prison, or pending an investigation into an alleged disciplinary violation. *Helms*, 459 U.S. at 467, 103 S.Ct. at 869. Such confinement is considered administrative and is not restricted by the fourteenth amendment, unless state law has created a liberty interest in remaining free from the restraints imposed. *Id.* at 469, 103 S.Ct. at 870. However, when state law limits the imposition of administrative confinement such as keeplock, by using mandatory language and by requiring specific substantive predicates, a liberty interest is created which may not be deprived without due process. *Id.* at 471–72, 103 S.Ct. at 871–72.

New York law has created such a liberty interest by using mandatory language and requiring specific substantive predicates for keeplock. Keeplock "shall" be imposed only when "an officer has reasonable grounds to believe that an inmate ... represents an immediate threat to the safety, security or order of the facility or [an] immediate danger to other persons or to property." 7 N.Y.C.R.R. § 251–1.6(a). An immediate threat exists "whenever an officer reasonably believes that a facility rule has been violated." *Bowe v. Smith*, 119 Misc.2d 453, 455, 465 N.Y.S.2d 391, 393 (Sup.Ct.Wyo.Co.1983). Having limited the imposition of keeplock to situations in which an officer reasonably believes a facility rule has been violated, New York State must provide a minimum of due process commensurate with the government function involved and the private interest affected. *See Helms*, 459 U.S. at 476, 103 S.Ct. at 873; *see also Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir.1987), *cert. denied*, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987).

An inmate confined to administrative keeplock must be afforded "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." *Helms*, 459 U.S. at 476, 103 S.Ct. at 873; *see Patterson v. Coughlin*, 761 F.2d 886,

890 (2d Cir.1985), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986). This due process requirement may be satisfied by "an informal, nonadversary review of the information supporting [the inmate's] administrative confinement, including whatever statement [the inmate] wishe[s] to submit, within a reasonable time after confining him to administrative segregation." *Helms,* 459 U.S. at 472, 103 S.Ct. at 871; *see Bolden,* 810 F.2d at 357–58.

■ New York regulations governing keeplock do not meet the minimal due process standards established in *Helms,* because there is no provision for an inmate in keeplock to make any statement to the officer in charge of his confinement. Although 7 N.Y.C.R.R. § 251–2.2 provides that a Review Officer at each prison must review misbehavior reports and the status of inmates in keeplock on a daily basis, no provision is made for an inmate to file any statement, written or oral. The sole opportunity to be heard on an inmate's administrative confinement is at a disciplinary hearing, where the ultimate issue of guilt or innocence will be determined. *See* 7 N.Y.C.R.R. §§ 253.1–253.9. The result, as evidenced by this case, is that inmates may be held in keeplock only to find, after seven days, that their confinement was not justified.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). Considering the fact that the inmate in administrative confinement is "merely transferred from an extremely restricted environment to an even more confined situation," *Helms,* 459 U.S. at 475, 103 S.Ct. at 873, and "the traditionally broad discretion of prison officials," *id.* at

476 n. 8, 103 S.Ct. at 874 n. 8, the *Helms* Court determined that the opportunity to be heard in an administrative confinement situation need not occur until "a reasonable time following an inmate's transfer" to keeplock, *id.* Prison officials are afforded a "reasonable time," to prevent interference with the security and safety needs of the prison, and to allow for flexibility in the event of prison emergencies. *See Helms,* 459 U.S. at 473, 103 S.Ct. at 872. For those reasons, courts are reluctant to mandate any specific time limitation.

Under the circumstances of *Helms,* the aftermath of a prison riot in which the plaintiff was charged with conspiracy and assault, the Court found reasonable an initial delay of four days before the inmate was provided an opportunity to be heard, because the delay was necessary to conduct an extensive investigation among hostile inmates. *Id.* at 475–76, 103 S.Ct. at 873–74. No such circumstances justify the seven-day delay here. Defendants conceded at oral argument that it would not be burdensome for the Review Officer to accept and consider oral or written statements by an inmate in keeplock, since he must review the inmate's status on a daily basis in any event. Absent a reason to delay the opportunity to make a statement until the determination of guilt or innocence on the underlying charge, the delay here is unreasonable. It is particularly unreasonable when the delay denies the inmate any meaningful opportunity to be heard. Since Gittens was not permitted to present his statement until the disciplinary hearing, the opportunity to avoid an improvident or wrongful administrative confinement was lost. *See Matiyn v. Henderson,* 841 F.2d 31, 36–37 (2d Cir.) (confinement of inmate in Special Housing Unit violated due process when no hearing until resolution of underlying disciplinary charges), *cert. denied,* —— U.S. ——, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988).[1]

---

**1.** New York regulations governing keeplock may allow even more egregious violations of due process rights. Since keeplock may be imposed without service of a misbehavior report, *see* 7 N.Y.C.R.R. § 251–1.6, and since the seven-day period within which a disciplinary hearing must commence does not begin to run until the service of a misbehavior report, *see* 7 N.Y.C.R.R. § 251–5.1(a), the possibility exists that a prisoner may be confined to keeplock without an opportunity to be heard for an indefinite time period. *See Diaz v. Coughlin,* 134 A.D.2d 668,

We hold that the lack of an adequate procedure for inmates to challenge keeplock until adjudication of the underlying disciplinary charge violates the minimal due process requirements described in *Helms.*

## II. *Qualified Immunity*

■ Gittens' claim was properly dismissed on qualified immunity grounds. State officials are immune from suits alleging constitutional violations if (1) "it was not clear at the time of the official acts that the interest asserted by the plaintiff was protected by a federal statute or the Constitution"; or (2) "it was not clear at the time of the acts at issue that an exception did not permit those acts"; or (3) "it was objectively reasonable for [the official] to believe that his acts did not violate those rights." *Robison v. Via,* 821 F.2d 913, 920–21 (2d Cir.1987); *see also Krause v. Bennett,* 887 F.2d 362, 368 (2d Cir.1989).

*Helms* clearly had established, prior to the keeplock at issue, that inmates such as Gittens had a constitutional right to make a statement concerning their administrative confinement within a reasonable time. No exceptions to that rule are relevant to this case. Thus, defendants are entitled to qualified immunity only if it was "objectively reasonable" for them to believe that a disciplinary hearing within seven days complied with the *Helms* standard. We believe it was.

When considering the defense of qualified immunity, the inquiry is not whether plaintiff has alleged a violation of an abstract legal standard, but whether under the particular circumstances alleged, defendants could have reasonably believed that they did not violate plaintiff's constitutional rights. *See Anderson v. Creighton,* 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987); *Eng v. Coughlin,* 858 F.2d 889, 895 (2d Cir.1988). Allegations of an improper subjective intent are irrelevant, if it could have been objectively reasonable for defendants to believe that

their actions did not violate clearly established law. *See Krause,* 887 F.2d at 372. "The very action in question need not previously have been held unlawful, but the unlawfulness must be apparent in light of preexisting law." *Neu v. Corcoran,* 869 F.2d 662, 665 (2d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989); *cf. Shabazz v. Coughlin,* 852 F.2d 697, 701 (2d Cir.1988) ("under certain circumstances, the absence of specific authority directly on point will not preclude a finding that the law was clearly established").

Prior to Gittens' confinement, 7 N.Y.C. R.R. § 252.1[f] (repealed 1983) permitted keeplock for up to three days before a hearing before an "adjustment committee" was required. *Helms* made clear that three days was not the outer boundary of reasonableness, because there the Court upheld as reasonable an opportunity to be heard after an initial delay of four days, and the inmate in that case had ultimately remained in administrative confinement for 50 days with periodic reviews. 459 U.S. at 463–66, 103 S.Ct. at 867–69.

Current New York regulations, which became effective on June 15, 1983, seemingly in response to *Helms,* allow keeplock for up to seven days without any hearing. *See* 7 N.Y.C.R.R. § 251–5.1. Although both former and current regulations had been challenged on various grounds, neither version had ever been held to violate due process because of inadequate provisions for an opportunity to be heard. *See, e.g., Deane v. Dunbar,* 777 F.2d 871, 876–77 (2d Cir.1985) (rejecting claim that *Helms* requires a hearing); *Smallwood–El v. Coughlin,* 589 F.Supp. 692, 699 (S.D.N.Y. 1984) (violations of state procedural rules "do not of their own accord deprive an individual" of due process).

*Helms* left open a "legitimate question." *See Mitchell v. Forsyth,* 472 U.S. 511, 535 n. 12, 105 S.Ct. 2806, 2820 n. 12, 86 L.Ed.2d 411 (1985); *cf. Shabazz,* 852 F.2d at 700. Prior to Gittens' confinement, no case had

---

669, 521 N.Y.S.2d 540, 541 (3d Dep't 1987) ("an inmate may be confined to his cell without the pendency of a Superintendent's hearing (*see,* 7

N.Y.C.R.R. 251–1.6), and ... such confinement should not be included in the computation of time pending the Superintendent's hearing").

ever marked the boundaries of reasonableness with sufficient clarity to say that defendants' reliance on state law providing for a hearing within seven days was clearly in violation of Gittens' rights. *See Eng,* 858 F.2d at 895. Defendants could reasonably believe, therefore, that the New York regulations complied with the "reasonable time" standard in *Helms.*

Accordingly, defendants are entitled to qualified immunity as a matter of law.

### CONCLUSION

The judgment of the district court is modified by declaring that the lack of an adequate procedure for inmates to challenge keeplock until adjudication of the underlying disciplinary charge violates due process; in all other respects, the judgment is affirmed. The matter is remanded to the district court to determine an appropriate attorney's fee for plaintiff who, on appeal, prevailed to the extent of invalidating the defendant's keeplock review procedure.