**Richard HODGES, Plaintiff,**

v.

**E.W. JONES; W. Keenan; S.G. Adler; Lt. Kannegiser; William Weaver, Defendants.**

**No. 92–CV–992.**

United States District Court, N.D. New York.

Jan. 4, 1995.

---

Richard Hodges, pro se.

G. Oliver Koppell, Atty. Gen. of State of N.Y. by Terrence X. Tracy, Asst. Atty. Gen., Albany, NY, for defendants.

## OPINION

CHIN, District Judge.[1]

*Pro se* plaintiff Richard Hodges commenced this action under 42 U.S.C. § 1983 alleging violations of his constitutional rights in connection with a disciplinary proceeding held in March 1992 while he was incarcerated at Washington Correctional Facility (the "Facility"). Before the Court are the parties' cross-motions for summary judgment and certain of the defendants' motion to vacate the Clerk's entry of default. Plaintiff also moves for a writ of attachment pursuant to the entry of default.

### Facts

Plaintiff is an inmate at the Facility where he was employed in the law library as a library assistant. On March 8, 1992, defendant William Weaver, the corrections officer in charge of the law library, orally ordered the inmate law library assistants to remove all legal work, including other inmates' legal materials, from their personal possession and to store them in the library. Plaintiff asserts that he was not present in the law library on the day that this order was issued.

After overhearing certain conversations between other inmates, Weaver concluded

---

1. United States District Judge for the Southern District of New York, sitting by designation.

that plaintiff had violated his order and was engaging in unauthorized legal work. Consequently, plaintiff's cell was searched on March 13, 1992 and certain documents were seized, including approximately "500 blank legal forms and personal·legal materials belonging to numerous inmates." (Pl. Motion for Summary Judgment, Exhibit J). The personal legal materials were later determined not to belong to any inmate incarcerated at the Facility at that time.[2] A "client list" in plaintiff's handwriting listing several inmates' names, numbers and cube locations was also confiscated. At this time, plaintiff was removed from the "honor dorm" where he was housed and placed in keeplock, or administrative confinement, pending the disciplinary hearing. He remained in keeplock from March 13 to March 25, 1992, suffering a loss of privileges.

On March 16, 1992, plaintiff was served with formal charges of disobeying a direct order, providing unauthorized legal assistance, and maintaining property in an unauthorized area. Plaintiff chose an assistant, Colin Thompson, to help him defend against the charges. Mr. Thompson met with plaintiff on March 17, 1992, and gathered information on plaintiff's behalf. Plaintiff also called for three witnesses to be examined at the disciplinary hearing.

The hearing was conducted on March 19, 20, 24, and 25, 1992 before defendant Lieutenant Kannegiser.[3] Plaintiff testified at the hearing, as did his three witnesses: corrections officer Cosey, who searched plaintiff's cell; defendant deputy Adler, in charge of programs at the Facility; and Weaver. Plaintiff also submitted various documents, including the contraband receipt tag dated March 13, 1992, a·copy of Directive # 4483 (the New York State Department of Corrections' policy concerning use of law libraries and legal assistance), an affidavit by a fellow inmate alleging that Weaver made defamatory statements about plaintiff, and copies of the misbehavior report. The hearing transcript reveals that plaintiff was not prevented from presenting any evidence he deemed necessary to his defense.

At the hearing, plaintiff did not deny having the offending documents in his possession. Rather, he claimed that he was not present when the order was issued and that he had no notice of any rule proscribing the possession of legal documents in his cell. In addition, plaintiff argued that the documents did not fall within the scope of the order, since the documents were blank legal forms and legal materials that did not belong to any inmate at the Facility.

Plaintiff was found guilty of disobeying a direct order and having property in an unauthorized area and not guilty of unauthorized legal work. The hearing officer imposed a penalty of 12 days keeplock and 15 days loss of privileges. Plaintiff received credit for the 12 days he had already spent in keeplock. Plaintiff was advised of his right to appeal and was provided with a written explanation of the disposition. Plaintiff's administrative appeal of the hearing officer's determination was denied.

### Procedural History

On July 31, 1992, plaintiff filed a *pro se* complaint seeking compensatory damages, punitive damages against Weaver, and injunctive relief. Plaintiff alleged that defendants violated his constitutional rights by: 1) placing him in a Special Housing Unit and confiscating his documents based on false charges, in violation of his due process rights, 2) arbitrarily prohibiting him from providing legal assistance to other inmates without a legitimate penological interest, and 3) violating his privacy rights by disseminating information found in the confiscated documents. Plaintiff also complains that he was arbitrarily denied release from his pre-hearing confinement and that the hearing officer at the disciplinary hearing was not impartial.

On December 17, 1992, Weaver filed an answer and defendants Jones, Keenan, Adler and Kannegiser moved to dismiss. Plaintiff

---

**2.** Plaintiff claimed that the confiscated documents were old ones he brought with him to the Facility as forms and as examples of his legal work.

**3.** The hearing was adjourned to allow the hearing officer to read through the documentary evidence submitted by the plaintiff and to produce the witnesses requested by plaintiff.

cross-moved for summary judgment on December 23, 1992. Defendants' motion to dismiss was denied on December 20, 1993 and defendants were instructed to respond to plaintiff's motion within 30 days. Defendants did not respond until March 8, 1994, at which time they cross-moved for summary judgment.

### Discussion

### Defendants' Motion to Vacate Default

On March 8, 1994, the Clerk of the Court entered a default, apparently pursuant to Fed.R.Civ.P. 55(a), against all defendants except Weaver for their failure to plead, answer, or otherwise defend. Defendants now move to vacate the default. For the reasons stated below, the motion is granted.

■ Rule 55(a) provides that a clerk may enter a default upon being advised by affidavit that a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend. After entry of a default, the defaulting party may move to set it aside for "good cause" shown. Fed. R.Civ.P. 55(c). Three criteria must be assessed to determine whether "good cause" has been shown: 1) whether the default was willful, 2) whether setting aside the default would prejudice the opposing party, and 3) whether a meritorious defense is presented. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir.1993) (citing cases). Each of these three factors must be considered. *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 243 (2d Cir.1994). While resolution of the motion is left to the sound discretion of the district court, the defaulting party should be given the benefit of doubt and the "good cause" proffered should be generously interpreted, since defaults are generally disfavored. *Enron Oil Corp. v. Diakuhara*, 10 F.3d at 95–96.

■ Here, defendants' counsel states that the delay in responding to plaintiff's motion for summary judgment was due to congestion in his trial calendar and his difficulty in contacting a defendant. Counsel further maintains that all defendants eventually did appear, either by answer or by motion to dismiss. Although counsel's explanations are less than compelling, the motion to vacate the default entry is granted since defendants have meritorious defenses, they would be prejudiced by the entry of a default judgment, and the default was not willful. Consequently, plaintiff's motion for a writ of attachment is denied.

### Standards for Summary Judgment

The standards applicable to motions for summary judgment are well-settled. A court may grant summary judgment only where there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). Accordingly, the court's task is not to "weigh the evidence and determine the truth of the matter but [to] determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment is inappropriate if, resolving all ambiguities and drawing all inferences against the moving party, there exists a dispute about a material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248–49, 106 S.Ct. at 2510–11 (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)). To defeat a motion for summary judgment, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11. As the Court held in *Anderson*, "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 1065 S.Ct. at 2511 (citations omitted). With these standards in mind, I turn to the parties' motions for summary judgment.

### Plaintiff's Claims

#### A. The Disciplinary Hearing

■ Plaintiff makes three claims regarding alleged constitutional violations with re-

spect to his disciplinary hearing.[4] First, plaintiff alleges that he was arbitrarily denied release from his pre-hearing confinement by defendant Keenan. Second, plaintiff alleges that he was falsely charged by defendant Weaver. Finally, plaintiff claims that the hearing officer, defendant Kannegiser, was biased against him.

### 1. *Pre-hearing Confinement*

Plaintiff's claim that his rights were violated by the denial of his request to be released from pre-hearing confinement must be rejected, for defendants provided plaintiff with all the due process protections to which he was entitled.

■ Plaintiff is correct in asserting that he had a liberty interest in remaining in the general population that could not be deprived without due process.[5] *Gittens v. LeFevre,* 891 F.2d 38, 40–41 (2d Cir.1989). Thus, plaintiff must be provided with at least minimum due process, *i.e.,* notice of the charges against him and an opportunity to present his views to the official responsible for his administrative confinement, namely, defendant Keenan. *See id., citing Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). This may be accomplished by an informal review of the information supporting plaintiff's administrative confinement, including any statements made by the inmate, within a reasonable period. *Id.*

■ Plaintiff relies on a memorandum from Keenan to plaintiff denying his request for release to support his claim. The denial of plaintiff's request, however, cannot by itself form the basis for a constitutional violation. Plaintiff does not claim that he was not provided with notice of the charges against him or denied the opportunity to present his views to Keenan. The fact that Keenan responded in writing to plaintiff's request shows that plaintiff was able to present his position to Keenan, as required by *Gittens.*

In addition, Keenan's response was dated March 16, 1992, three days after plaintiff's confinement in the Special Housing Unit and within *Gittens'* reasonable period requirement.

Since no rational trier of facts could conclude on the record before this Court that plaintiff's constitutional rights were violated by his pre-hearing confinement, defendants' motion for summary judgment must be granted on this claim.

### 2. *False Charges*

■ Plaintiff's claim that his constitutional rights were violated by the allegedly false charges filed by defendant Weaver must be dismissed. A prison inmate does not have a "constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in deprivation of protected liberty interest." *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986), *cert. denied,* 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988). Rather, the Constitution only provides that a prisoner will not be deprived of a liberty interest without due process. *Id.*

■ Since plaintiff was provided a hearing and was given the opportunity to rebut the charges against him, the allegedly false charges do not give rise to a *per se* constitutional violation actionable under § 1983. *Id.* at 953. This does not end the inquiry, however, since plaintiff also challenges the adequacy of the disciplinary hearing. Accordingly, I must determine whether plaintiff has demonstrated the existence of a genuine issue of fact as to whether the hearing comported with the requirements of due process, notwithstanding the fact that the charges that subjected the inmate to the hearing might be false. *Id.*

■ Due process in this situation requires that a prisoner be provided with advance written notice of the charges, the opportunity

**4.** Plaintiff's *pro se* complaint will be liberally construed, even though plaintiff has held himself out to be a certified paralegal. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), *per curiam.*

**5.** New York Corrections Law provides that keeplock, or administrative confinement, shall be im-

posed only when an officer has reasonable grounds to believe that an inmate represents an immediate threat to the order of the facility. 7 N.Y.C.R.R. § 251–1.6(a). An immediate danger exists when an officer reasonably believes that a facility rule has been violated. *Gittens v. Le-Fevre,* 891 F.2d 38, 40 (2d Cir.1989).

to appear at the hearing and to call witnesses and submit evidence, and a written statement explaining the disposition of the hearing. *Wolff v. McDonnell,* 418 U.S. 539, 564, 94 S.Ct. 2963, 2987–90, 41 L.Ed.2d 935 (1974). If the hearing does comport with due process, it must then be determined whether some evidence exists to support the disciplinary decision. *Freeman v. Rideout,* 808 F.2d at 954–55 (*citing Superintendent, Mass. Correctional Institute v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)).

■ Here, plaintiff does not dispute that he was given written notice of the charges more than 24 hours in advance of the disciplinary hearing, that he attended the hearing at which he testified on his own behalf, called witnesses, and submitted documentary evidence, and that he was given a written explanation of the hearing officer's disposition. Additionally, plaintiff was provided with an assistant to help him in his defense, and plaintiff does not contend that the service of his legal assistant was deficient in any way. No reasonable trier of fact could find, on this record, that the disciplinary hearing did not comport with the requirements of due process.

■ The next inquiry is whether there is some evidence in the record to support the hearing officer's disciplinary action. Clearly there is. Kannegiser stated on the record that he relied upon Weaver's written report and Weaver's oral testimony in reaching his decision. Kannegiser also heard plaintiff's testimony and reviewed the documents submitted by plaintiff, but apparently did not find that evidence persuasive. The hearing officer made judgments concerning the credibility of the witnesses who testified and the weight of the evidence offered. Due process does not require that the hearing officer's credibility assessments or weighing of the evidence be evaluated; rather, the relevant standard is whether there is some evidence in the record to support the disciplinary decision. *Superintendent v. Hill,* 472 U.S. at 455, 105 S.Ct. at 2774; *see also Freeman v. Rideout,* 808 F.2d at 955 (sufficient evidence existed to support disciplinary sanction where disciplinary committee relied on false charges as well as other reports and testimony); *Ames v. Artuz,* 1989 WL 54114, *6, n. 10 (S.D.N.Y.1989) (due process requirements satisfied even where disciplinary decision rested primarily upon report containing allegedly false charges).

### 3. *Hearing Officer Bias*

■ Finally, plaintiff contends that the disciplinary hearing was unconstitutional because the hearing officer, Lieutenant Kannegiser, was biased against him. An impartial decision-maker is a fundamental requirement of due process in a prison context. *See Wolff v. McDonnell,* 418 U.S. 539, 592, 94 S.Ct. 2963, 2992, 41 L.Ed.2d 935 (1974) (Brennan, J., dissenting) (citing cases).

■ Plaintiff has presented no evidence of any bias by Kannegiser against plaintiff. Plaintiff claims that Kannegiser was "pressured" to enter a guilty disposition by his superiors and that Kannegiser admitted this at the hearing. (Complaint, ¶ 5). There is no such statement, however, in. the transcript, and plaintiff did not make any objections on the record regarding any alleged bias. In addition, Kannegiser found plaintiff not guilty on the charge of unauthorized legal work.

Since no rational trier of fact could find on the record before the Court that plaintiff's procedural due process rights were violated with respect to his disciplinary hearing, defendants' motion for summary judgment on this claim must be granted. *See Russell v. Coughlin,* 774 F.Supp. 189, 194–97 (S.D.N.Y. 1991); *Lott v. Selsky,* 747 F.Supp. 226, 229–30 (S.D.N.Y.1990, *aff'd,* 932 F.2d 957 (2d Cir.1991)).

### B. *Inmate Legal Assistance*

Plaintiff claims that his authorization to work in the law library was arbitrarily terminated by defendants, in particular, defendant Adler. Plaintiff further complains that the termination of his position as law clerk in the prison law library and the confiscation of his documents deprived other inmates of his assistance, thereby impermissibly denying them their right of access to the courts. This claim must be dismissed for two reasons.

First, plaintiff does not allege that his own right of access to the courts was deprived by defendants' actions. Hence, substantive due process concerns are not implicated. *See Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988). Instead, plaintiff alleges only that he was removed from his position as a library assistant without a fair hearing, which only involves adherence to procedural due process requirements. As discussed above, plaintiff was afforded all of the procedural due process protection to which he was entitled. In addition, plaintiff has no constitutional right to any particular position of employment. *Lane v. Reid,* 575 F.Supp. 37, 39 (S.D.N.Y. 1983) (*citing Baden v. Koch,* 638 F.2d 486, 489 (2d Cir.1980)).

Second, plaintiff claims that his removal from the law library and the confiscation of his forms and sample papers interferes with his fellow inmates' right of access to the courts, since he is rendered less capable of assisting them. While it is true that jailhouse lawyers may challenge official action that prevents them from assisting other prisoners in the absence of reasonable alternatives, there is no constitutionally protected right to be a jailhouse lawyer distinct from a claim of interference of access to the courts. *See, e.g., Gassler v. Rayl,* 862 F.2d 706 (8th Cir.1988), *citing Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); *Smith v. Maschner,* 899 F.2d 940, 949 (10th Cir.1990) (inmates do not have a constitutionally protectable interest to provide legal representation to other inmates).

Plaintiff does not allege that his fellow inmates were deprived of assistance or access to the courts; rather, plaintiff alleges that other inmates are being denied *his* legal assistance. This allegation does not state a constitutional violation. *See Smith v. Maschner,* 899 F.2d at 949 ("prison inmates do not possess the right to a particular prisoner's help in preparing their legal materials, so long as prison officials make other assistance available"). There is no dispute that other assistance is available; the Facility maintains a law library and plaintiff does not complain that it is inadequate. Nor does plaintiff dispute that the law library is staffed with inmate clerks, other than plaintiff, who can provide the prisoners legal assistance. Finally, plaintiff himself was furnished with an assistant to help him in his defense at the disciplinary hearing. Thus, it is clear from the record that the inmates at the Facility had some reasonable alternatives to plaintiff's legal assistance. Accordingly, defendants' motion for summary judgment must be granted on this claim. *See Gassler v. Rayl,* 862 F.2d 706, 708 n. 3 (8th Cir.1988) (plaintiff's claim that his removal as law library clerk unconstitutionally interfered with his right to provide legal assistance to other prisoners rejected where record clearly showed that law library and inmate law clerks were available); *but see Gibbs v. Hopkins,* 10 F.3d 373, 379 (6th Cir.1993) (plaintiff permitted to amend complaint to allege lack of reasonable alternatives to ensure prisoners' access to the courts).

## C. *Right to Privacy*

Plaintiff also claims that Weaver violated his privacy rights by divulging the contents of the confiscated legal documents. Apart from plaintiff's conclusory and cursory assertions, however, there is nothing in the record to support this claim. Additionally, even if it is true that Weaver divulged the contents of the documents, it is clear from the record that none of the documents contained information concerning any of the inmates incarcerated at the Facility at that time, and therefore plaintiff's privacy rights were not implicated.

Since there is nothing in the record before the Court on which a rational trier of fact could find that plaintiff's constitutional right to privacy was violated by defendants, defendants' motion for summary judgment on this claim must be granted as well.

## D. *Unposted Rule or Regulation*

Plaintiff contends in his motion for summary judgment that he was disciplined for an unposted rule in violation of his due process rights, *i.e.,* he was disciplined for keeping legal work in his cell. New York state law has created a liberty interest in an inmate's not being subject to disciplinary

sanctions without notice of the specific rule or regulation he is deemed to have violated. *See* N.Y.Correction Law § 138(1) ("All institutional rules and regulations defining and prohibiting inmates misconduct shall be published and posted in prominent locations within the institution") and 138(5) ("No inmate shall be disciplined except for a violation of a published and posted written rule or regulation, a copy of which has been provided to the inmate."); *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983) ("on balance we are persuaded that the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest."); *see also Gittens v. LeFevre*, 891 F.2d 38, 40 (2d Cir.1989).

Defendants apparently do not contradict plaintiff's contention that there was no posted rule proscribing his keeping legal documents in his cell. Weaver states in his affidavit in support of defendants' motion that he gave his order because he was "attempting to ascertain ... *what the policy was or should be for law library assistants having legal material outside of the law library.*" (Emphasis added). Defendants argue that a posted rule is not necessary since plaintiff disobeyed a direct order. Plaintiff maintains, however, that he was not in the law library on the day the order was issued. Since the record is unclear (i) whether a published and posted rule existed that prohibited plaintiff from keeping legal documents in his cell, (ii) whether plaintiff was notified of any such rule, and (iii) whether plaintiff was present when Weaver gave his order to the law library assistants, there exist questions of fact that preclude summary judgment. *Cf. People v. Koehler*, 183 A.D.2d 472, 583 N.Y.S.2d 415 (1st Dept.1992) (disciplinary findings for arson and assault expunged from inmate's record where inmate was disciplined without having received a copy of the prison's rules and regulations).

■ Plaintiff, however, has failed to allege any personal involvement by defendants Jones, Keenan or Adler with respect to this claim. Absent some personal involvement, none of these three defendants can be held liable under section 1983 for this claim. *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir.1987).

As to Weaver and Kannegiser, plaintiff's complaint, construed broadly, alleges some personal involvement. Accordingly, defendants' motion for summary judgment is granted on this claim with respect to Jones, Keenan and Adler, and denied with respect to Kannegiser and Weaver. Plaintiff's motion for summary judgment is denied on this claim because of the existence of questions of fact.

### E. *Qualified Immunity*

■ Defendants argue in their motion for summary judgment that they are immune from liability under the doctrine of qualified immunity. Qualified immunity "shields public officials from liability for their discretionary acts that do 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hathaway v. Coughlin*, 37 F.3d 63, 67 (2d Cir.1994) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Even when a plaintiff's federal rights are well-defined, a defendant may successfully claim qualified immunity "if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir.1991).

The use of summary judgment by government officials claiming qualified immunity is expressly encouraged to reduce the burden of defending insubstantial suits. *See Harlow v. Fitzgerald*, 457 U.S. at 815–16, 102 S.Ct. at 2736–37; *see also Cartier v. Lussier*, 955 F.2d 841, 844 (2d Cir.1992) (holding that defendants claiming qualified immunity to § 1983 action were entitled to summary judgment where factual disputes were not material).

In short, plaintiff's claims will withstand summary judgment only if he presents some evidence upon which a reasonable trier of facts could find (i) that defendants violated well-established federal rights and (ii) that it was not objectively reasonable for defendants to believe that their conduct did not violate those rights.

Here, the record is devoid of any evidence from which a rational factfinder could find that defendants violated plaintiff's clearly established federal or constitutional rights with respect to all of his claims except for his last

claim discussed above. In addition, even if I were to conclude that defendants' alleged conduct violated such rights, there is no reasonable basis for concluding that defendants did not have an objectively reasonable belief that their acts were constitutionally proper.

First, no rational trier of fact could find on the record before the Court that defendants interfered with plaintiff's exercise of his due process rights with regard to his release from pre-hearing confinement or the disciplinary hearing. It was objectively reasonable for the defendants to believe that their conduct with respect to the disciplinary hearing was within constitutional limits.

Second, since plaintiff was afforded his full due process rights with respect to his disciplinary hearing, plaintiff's claim that he was falsely or wrongly accused does not allege the violation of any clearly established statutory or constitutional right. *Freeman v. Rideout,* 808 F.2d 949 (2d Cir.1986), *cert. denied,* 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988) (filing of false charges not a *per se* violation of § 1983).

Third, plaintiff's right to privacy with respect to the confiscated documents cannot be considered to be well-defined. While Weaver's alleged conduct concerning the documents might not have been prudent, his actions do not violate clearly established constitutional rights of which a reasonable person would have known, particularly since the documents in question did not involve plaintiff.

Since plaintiff has failed to present sufficient evidence to raise a genuine issue of fact as to defendants' qualified immunity with respect to the claims discussed above, defendants' motion for summary judgment is granted as to those claims.

Issues of fact, however, exist as to whether qualified immunity shields Weaver and Kannegiser from liability as to plaintiff's final claim that he was unconstitutionally disciplined for an unposted rule or regulation. New York Correction Law § 138 is clear in its requirement that rules and regulations proscribing inmate conduct be prominently posted and that an inmate shall be disciplined only for a violation of a posted rule or regulation. The record is ambiguous as to whether a rule was posted concerning an inmate's keeping legal work in his cell or whether plaintiff had notice of such a rule. A jury could reasonably conclude that it was not objectively reasonable for these two defendants to believe that they were acting constitutionally if they in fact disciplined plaintiff for violating a new rule that was not published or posted and as to which he had no notice. Thus, plaintiff has raised a genuine issue of fact that defendants' actions may have violated clearly established constitutional rights of which a reasonable person would have known. Accordingly, defendants' motion for summary judgment is denied on this claim.

*Conclusion*

Defendants' motion to vacate the entry of default is granted and plaintiff's motion for a writ of attachment is denied. Defendants' motion for summary judgment is granted except with respect to plaintiff's claim that he was disciplined for an unposted rule or regulation. As to that claim, defendants' motion is denied as to defendants Kannegiser and Weaver. Plaintiff's motion for summary judgment is denied.

SO ORDERED.