**Shane ATKINS, Plaintiff,**

**v.**

**Joseph LATANZIO, Timothy Kerr, Al Scott, Lance Inman, Kenneth Mrozik, Edward Hulton, and Francis Gagliardi, Defendants.**

**No. 89–CV–453H.**

United States District Court,
W.D. New York.

May 18, 1995.

Michael W. McCarthy, Mary Ellen Gianturco, Prisoners' Legal Services of New York, Buffalo, NY, for Plaintiff.

Dennis C. Vacco, Attorney General for the State of New York, James L. Gelormini, Assistant Attorney General, Rochester, New York, for Defendants.

670

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

The parties have consented pursuant to 28 U.S.C. § 636(c) to have the undersigned conduct all proceedings in this case, including entry of judgment. A four-day non-jury trial was held before the undersigned, concluding on February 10, 1995. On that date the court issued its oral decision after trial, finding that plaintiff had failed to sustain his burden of proof on his claim under 42 U.S.C. § 1983 for use of excessive force in violation of the eighth amendment, based on the conduct of certain prison employees at the Wende Correctional Facility on two separate occasions in January, 1988 (Item 85).

Also on February 10, 1995, plaintiff orally moved to amend his complaint to assert two additional claims under the due process clause of the fourteenth amendment, based on trial evidence related to the January, 1988 incidents (*id.*, pp. 10–22). The court adjourned the matter until May 8, 1995 to allow for briefing and argument of this motion.

The proposed amendment alleges that Corrections Officer Timothy Kerr violated plaintiff's substantive due process rights by filing a criminal complaint against plaintiff based on an altercation at Wende on January 20, 1988, in which Kerr stated that he witnessed plaintiff bite Corrections Officer Francis Gagliardi. According to plaintiff, this information led to a guilty plea on criminal charges before the Alden Town Court and one additional year of incarceration. Plaintiff asserts that Kerr's affidavit in support of his criminal complaint was false, as demonstrated by Kerr's deposition and trial testimony in this case in which he stated that he did not see plaintiff bite Gagliardi.

The proposed amendment also alleges that plaintiff's procedural due process rights were violated when he was handcuffed and removed from his cell on January 18 and 20, 1988, even though the proof at trial showed that the prison order authorizing this type of restraint had expired on January 13, 1987.

Defendants argue that these claims were not tried by consent as required by Rule 15(b), that they do not relate back to the claims in the original pleadings, that they are barred by the doctrine of qualified immunity, and that they fail on their merits.

The factual background of these claims is incorporated herein by reference to the court's February 10, 1995 decision after trial (Item 85), and will be restated here only as necessary to the following discussion of the legal issues presented on this motion.

## DISCUSSION

### 1. Amendment of Pleadings to Conform to the Evidence Under Rule 15(b).

Rule 15(b) of the Federal Rules of Civil Procedure provides, in relevant part:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the trial of these issues.

In this case, the parties did not expressly consent to try the issues now sought to be raised on this belated motion to amend. The question thus presented is whether these issues were tried by implied consent.

Upon review of the record, I find that the "substantive due process" issue pertaining to the veracity of Officer Kerr's statements in support of the criminal charges filed against plaintiff stemming from the January 20, 1988 incident was fully litigated by the parties. Not only was this issue raised at trial by plaintiff's counsel during Officer Kerr's cross examination, but it was also the subject of pretrial motions *in limine*, during which plaintiff vigorously contested the admission of evidence supporting his April, 1988 conviction and additional one-year sentence (*see* Item 63). This evidence was likewise the subject of *two* pretrial summary judgment motions by defendants in this case, as reflected in Judge Telesca's March 25,

1991 and February 12, 1993 decisions (Items 25 and 42).[1]

■ With regard to the claim of denial of procedural due process because the plaintiff's handcuff restraint order had expired, I find that this issue was tried by implied consent as well. At trial, Sgt. Albert Scott testified that he was the supervising officer in charge of the SHU where plaintiff was housed at the time of the incidents complained of. He was questioned on direct, cross and redirect examination regarding his personal knowledge of the circumstances surrounding plaintiff's handcuff restraint order. He was also directly questioned by the court as to whether there was a restraint order in effect at the time of the alleged incidents. Finally, the "expired" restraint order was received by the court as evidence (Plaintiff's Ex. OO).

Accordingly, based on the record before the court, I find that the due process claims subject to this motion have been tried by the implied consent of the parties. The court must therefore treat these issues "in all respects as if they had been raised in the pleadings." Fed.R.Civ.P. 15(b).

### 2. Relation Back Under Rule 15(c).

■ Defendants argue that even if these claims were tried by implied consent, amendment of the pleadings should not be allowed because the claims are time-barred under the applicable statutes of limitations. This argument is untenable in light of the fact that these claims clearly "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . . ." Fed.R.Civ.P. 15(c)(2).

■ For these reasons, plaintiff's motion for leave to amend the pleadings to cause them to conform to the evidence survives analysis under the requirements of Rule 15(b) and (c). As the following discussion shows, however, amendment would be futile because the proposed claims are barred by the doctrine of qualified immunity and, in any event, have no merit. *See Foman v. Davis,* 371 U.S. 178, 183, 83 S.Ct. 227, 230, 9

L.Ed.2d 222 (1962); *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990).

### 3. Qualified Immunity.

■ State officials performing discretionary functions in the course of their duties are immune from suits alleging constitutional violations "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (quoted in *Russell v. Coughlin,* 910 F.2d 75, 78 (2d Cir.1990)). Even when such rights are clearly established, qualified immunity will protect a government official "if it was objectively reasonable for [the official] to believe that his acts did not violate those rights." *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987); *Russell, supra,* 910 F.2d at 78; *Gittens v. LeFevre,* 891 F.2d 38, 42 (2d Cir.1989). For a right to be clearly established, it is sufficient if decisions of the Supreme Court or of the appropriate circuit court have defined the contours of the right with reasonable specificity. *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989).

In this case, therefore, the initial inquiry is whether as of January 20, 1988 it was clearly established (a) that plaintiff had the right not to be criminally charged based on false or misleading information, and (b) that plaintiff had the right to be free from handcuff restraint while being moved from his cell to the recreation area in the Wende SHU. If not, then qualified immunity applies to the officers' conduct complained of in the proposed amendment. If these rights were clearly established as of that date, then the next inquiry for the court is whether it was objectively reasonable for the officers to believe that their conduct did not violate those rights.

### a. False or Misleading Information in the Criminal Charge.

■ It has long been established that the due process clause protects against con-

---

1. In addition, as addressed in Judge Telesca's March 25, 1991 decision and order, this same evidence was the subject of parallel litigation in

the New York State Court of Claims. On May 18, 1990, plaintiff's case was dismissed by the state court after trial.

victions obtained through the use of evidence known by representatives of the state to be false. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1176, 3 L.Ed.2d 1217 (1959); *cited in Morrison v. Lefevre*, 592 F.Supp. 1052, 1073 (S.D.N.Y.1984) (also citing *Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)). Accordingly, it was clearly established as of January 20, 1988 that plaintiff had the due process right not to be convicted and imprisoned for an additional year on criminal charges that were based on information known by Officer Kerr to be false.

■ The next issue is whether plaintiff has demonstrated that Officer Kerr knowingly presented false information to the Alden Town Court. The record on this issue is as follows. In his affidavit in support of the assault charges brought against plaintiff before the Alden Town Court, Kerr stated:

At 9:55 a.m. Officer L. Inman and I were escorting inmate Shane Atkins back to his cell from the exercise yard. As he was entering his cell (S.H.U. # 10) inmate Atkins spun around and struck Officer Inman on the left side of his face with both hands clenched in a fist. At this time Officer Inman and I placed inmate Atkins on the floor, Officer Gagliardi and Sgt. Mrozik then responded. As Officers Gagliardi, Inman and myself were restraining inmate Atkins I witnessed inmate Atkins bite Officer Gagliardi's right upper abdomen....

(Item 76, Ex. 1). This affidavit was prepared on the afternoon of January 20, 1988, the day that the incident occurred.

At the trial in February of 1995, Officer Kerr testified as follows on cross examination by plaintiff's counsel:

Q:  ... Officer, you didn't actually see Mr. Gagliardi being bit on January 20th, 1988, did you?

A:  No, I didn't see the bite until we were walking off the galley.

Q:  But you didn't see him bit, is that correct?

A:  No. I believe he had him in a headlock. I didn't see him bit, no, because

I was worried about restraining [plaintiff].

Q:  Did you hear Corrections Officer Gagliardi scream?

A:  Yes, I believe he screamed.

Q:  And when did he scream?

A:  I couldn't tell you exactly when.

(Item 76, Ex. 3).

Plaintiff now focuses on the discrepancy between Kerr's statement at the time of the incident and his statement under oath at trial, some seven years after the incident, as a basis for his claim that his conviction in the Alden Town Court was procured through false evidence in violation of his substantive due process rights.

Although there is unquestionably a discrepancy between the two versions of the events, I am unwilling to conclude that the discrepancy was caused by deliberate deceit as opposed to inadvertence, failure of recollection or some other innocent explanation. After listening to Officer Kerr testify at trial, I found him to be a credible witness who did his best to recall events that occurred some seven years before.

Furthermore, the assault charges were brought before the Alden Town Court by way of three criminal complaints filed by New York State Police Investigator Gerald H. Wienckowski. These complaints were based on the three separate but consistent accounts of the incident contained in the individual supporting affidavits of Officers Kerr, Inman and Gagliardi. Gagliardi also stated that plaintiff bit him in the right upper abdomen. Inman stated that all three of the officers suffered injuries during the altercation. Plaintiff has therefore failed to show how Kerr's statement that he "witnessed" plaintiff bite Gagliardi was material or necessary to the criminal conviction entered by the Town Court.

Finally, as this court found in its decision and order from the bench, the totality of the evidence presented at trial supported Officer Kerr's version of the January 20, 1988 incident, not plaintiff's version. The testimony and medical exhibits showed that plaintiff did in fact bite Officer Gagliardi during the incident. Gagliardi had plaintiff in a headlock,

and plaintiff was in the position to bite him in the area of the right upper abdomen. Gagliardi screamed when he was bitten, and Kerr heard him scream. Gagliardi showed Kerr the bite marks as they were walking back down the galley after placing plaintiff back in his cell. The facility's medical records show that Gagliardi was treated for a bite wound in the right upper abdomen which had occurred that very day. This proof not only supports the finding made after trial regarding plaintiff's excessive force claim, but also the finding that Kerr did not materially misrepresent the facts when he stated that he "witnessed" plaintiff bite Gagliardi.

Accordingly, based on the proof presented at trial, it was objectively reasonable for Officer Kerr to believe that his statement in support of the criminal charges brought in Alden Town Court did not violate plaintiff's substantive due process right not to be convicted on the basis of false information. Officer Kerr is therefore entitled to qualified immunity against such a claim.

### b. Handcuff Restraint Order.

Plaintiff also contends that the proof at trial supports a claim that his right to procedural due process was violated when he was transported in handcuffs from his SHU cell to the SHU recreation area on January 18 and 20, 1988. Plaintiff has not cited any cases in support of his argument that such a right was clearly established as of that date. Instead, he claims that the Wende Correctional Facility's express policy and procedure regarding the handcuffing of SHU prisoners when exiting their cells [2] has created an enforceable liberty interest in remaining free from such restraints, and that this interest was unconstitutionally infringed when he was transported from his cell in handcuffs after the order authorizing such restraints had expired.

It was, of course, clearly established by January 20, 1988 that a state may confer enforceable liberty interests on prisoners through its enactment of statutory or regulatory measures which place substantive limitations on prison officials' "broad administrative and discretionary authority over the institutions they manage...." *Hewitt v. Helms,* 459 U.S. 460, 467, 469–72, 103 S.Ct. 864, 868, 869–871, 74 L.Ed.2d 675 (1983); *Bolden v. Alston,* 810 F.2d 353, 357 (2d Cir.), *cert. denied,* 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987). For a liberty interest to be conferred by the state, two requirements must be met: (1) the state must have articulated specified "substantive predicates" which limit the discretion of state officials, and (2) the state must have employed "explicitly mandatory language" requiring state officials to follow those substantive predicates. *Klos v. Haskell,* 48 F.3d 81, 87 (2d Cir.1995) (citing *Hewitt v. Helms, supra* 459 U.S. at 466, 103 S.Ct. at 868; *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 462–63, 109 S.Ct. 1904, 1909–10, 104 L.Ed.2d 506 (1989)).

An analysis of Wende's SHU procedures (*see* Note 2, *supra* ) in light of these requirements indicates that the state has conferred no liberty interest on inmates to be free from handcuffs while outside their cells unless a current restraint authorization order is in place. The Wende procedure provides that the Deputy Superintendent of Security "will" issue a 30–day restraint order "if" the SHU supervisor on duty determines "in his/her opinion" that a particular inmate "may be assaultive." This is not the "language of an unmistakably mandatory character" that is indicative of an enforceable liberty interest. *Hewitt v. Helms, supra,* 459 U.S. at 471, 103 S.Ct. at 870; *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987) (prisoner has no constitutional liberty or property right to his

---

**2.** Wende's SHU procedures provide:

If an inmate's behavior warrants, he shall be handcuffed when exiting his cell. The area supervisor will recommend to the Deputy Superintendent of Security those inmates who, in his/her opinion may be assaultive. If authorization is given, the Deputy Superintendent of Security will issue a restraint order for a period of time not to exceed 30 days for each

inmate effected [sic]. The Deputy Superintendent will authorize the type of restraint. This procedure must be reviewed and documented for each 30 day period. All inmates leaving the unit for any reason will be handcuffed. Wende Correctional Facility Policy and Procedure Manual, Special Housing Unit Procedures, Item 2021, Section III(F)(1)(July 15, 1987)(Item 76, Ex. 4).

prison job). As stated by the Supreme Court, "[i]f the decisionmaker is not 'required to base [his] decisions on objective and defined criteria,' but instead 'can deny the requested relief for any constitutionally permissible reason or for no reason at all,' the State has not created a constitutionally protected liberty interest." *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983) (quoting *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 466–67, 101 S.Ct. 2460, 2465–66, 69 L.Ed.2d 158 (1981)). The only criteria limiting the Wende Deputy Superintendent's discretion to authorize handcuff restraints for a particular SHU inmate is the SHU supervisor's opinion regarding the inmate's behavior. There is no language in the procedure suggesting that the Deputy Superintendent could not deny the inmate's request to remain free from handcuffs while outside his cell for any reason, such as assaultive behavior toward staff.

■ Once the restraint authorization is given, the procedure provides that it "must be reviewed and documented for each 30 day period." However, in the absence of language substantively limiting the Deputy Superintendent's discretion to authorize handcuff restraint for assaultive prisoners, this 30–day review requirement does not in and of itself create an enforceable liberty interest to be free from restraints when the authorization expires. *See, e.g., Wright v. Smith*, 21 F.3d 496, 498 (2d Cir.1994); *see also Maust v. Headley*, 959 F.2d 644, 649 (7th Cir.1992) (prisoner's procedural right to pre-transfer hearing has no substantive meaning without protected liberty interest in remaining in least restrictive environment).

In addition, plaintiff has failed to show that the handcuff restraint was a "disciplinary" rather than an "administrative" condition of his confinement in SHU, requiring any more process than he was given. *See, e.g., Hall v. Unknown Agents of N.Y. Corr. Serv. Dep't*, 825 F.2d 642, 647 (2d Cir.1987). Indeed, plaintiff has failed to explain how his treatment in the Wende SHU would have differed in any way had he been provided the right which he claims he was deprived of.

Finally, in its recent analysis of whether New York's "shock incarceration" program creates an enforceable liberty interest, the Second Circuit noted a distinction between alleged deprivations of an inmate's "justifiable expectation" of liberty, such as the revocation of parole at issue in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1971), and "deprivations imposed in the course of the daily operations of an institution," such as the administrative confinement at issue in *Helms, supra. Klos v. Haskell, supra*, 48 F.3d at 87. In light of the holding in *Klos* that the inmate's due process rights were not violated when he was unexpectedly removed from the shock incarceration program at the Monterey Correctional Facility and transferred to the general population at the Elmira Correctional Facility, I find it unlikely that the Second Circuit would find an enforceable liberty interest implicated by the minor deprivation imposed on an "assaultive" inmate when he is handcuffed prior to exiting his SHU cell at the Wende facility.

For these reasons, I find that it was not clearly established as of January 20, 1988 that plaintiff had an enforceable liberty interest in remaining free from handcuff restraints when exiting his SHU cell, whether or not the order authorizing such restraint had expired. Defendants are therefore entitled to qualified immunity against such a claim.

Furthermore, as demonstrated by the above discussion, the proof presented at trial clearly does not support the claims sought to be added to the case at this late date.

Accordingly, I find that it would be futile to allow plaintiff to amend his complaint after trial of his excessive force claim to add claims for violation of his substantive and procedural due process rights.

### CONCLUSION

For the reasons set forth above and in this court's oral decision after trial, it is hereby ORDERED that plaintiff's oral motion (Item 85, pp. 10–22) for leave to amend the pleadings to conform to the evidence is denied, and the case dismissed. The Clerk of the Court is directed to enter judgment in favor of defendants.

Pursuant to 28 U.S.C. § 1915(a), it is hereby CERTIFIED that appeal from this judgment would not be taken in good faith.

**SO ORDERED.**